1

2   BENNETT TUELLER JOHNSON & DEERE
    Jared L. Inouye (Nevada Bar No. 9067)
3   3165 East Millrock Drive, Suite 500
    Salt Lake City, UT 84121
    Phone: (801) 438-2000
4   Jinouye@btjd.com

5   THOMPSON HINE LLP
    Jessica Salisbury-Copper (pro hac vice forthcoming)
6   10050 Innovation Drive, Suite 400
    Dayton, OH 45342
7   Phone: (937) 443-6854
    Jessica.Salisbury-Copper@ThompsonHine.com
8

9   Kip Bollin (pro hac vice forthcoming)
    3900 Key Center
10  127 Public Square
    Cleveland, OH 44114
11  Phone: (216) 566-5500
    Kip.Bollin@ThompsonHine.com
12

13  Todd M. Seaman (pro hac vice forthcoming)
    41 South High Street, Suite 1700
14  Columbus, OH 43215
    Phone: 614.469.3200
15  Todd.Seaman@ThompsonHine.com

16
                **UNITED STATES BANKRUPTCY COURT**
17                      **DISTRICT OF NEVADA**

18  IN RE:    BK-18-16836—hlb

19  AMANDA RAE DAVIS ,                          CHAPTER 7
                        Debtor(s)
20  _____

21  AMANDA DAVIS, INDIVIDUALLY AND ON          Adversary Proceeding: 23—01110—hlb
    BEHALF OF ALL OTHERS SIMILARLY
22  SITUATED
                        Plaintiff(s)          **MOTION TO DISMISS
23                                            PLAINTIFF'S AMENDED
                                              COMPLAINT FILED BY
24  v.                                        KEYBANK N.A. AND
                                              MEMORANDUM OF POINTS AND
25  KEYBANK N.A., et al,                      AUTHORITIES IN SUPPORT
                                              THEREOF**
26                      Defendant(s)
                                              **ORAL ARGUMENT REQUESTED**
27  _____

28

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure, Defendant KeyBank N.A. ("Key") moves the Court to dismiss the First Amended Complaint for failure to state a claim for which relief can be granted.

This Motion is supported by the accompanying Memorandum of Points and Authorities contained herein.

DATED: October 16, 2023

BENNETT TUELLER JOHNSON & DEERE

*/s/ Jared Inouye*
Jared Inouye
Nevada Bar No. 9067
3165 East Millrock Drive
Suite 500
Salt Lake City, UT 84121
Phone: (801) 438-2000
Jinouye@btjd.com

THOMPSON HINE LLP
Jessica Salisbury-Copper (pro hac vice forthcoming)
10050 Innovation Drive, Suite 400
Dayton, OH 45342
Phone: (937) 443-6854
Jessica.Salisbury-Copper@ThompsonHine.com

Kip Bollin (pro hac vice forthcoming)
3900 Key Center
127 Public Square
Cleveland, OH 44114
Phone: (216) 566-5500
Kip.Bollin@ThompsonHine.com

Todd M. Seaman (pro hac vice forthcoming)
41 South High Street, Suite 1700
Columbus, OH 43215
Phone: 614.469.3200
Todd.Seaman@ThompsonHine.com

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     PROCEDURAL POSTURE. ................................................................................. 1

III.    FACTUAL ALLEGATIONS ................................................................................ 2

IV.     ARGUMENT ......................................................................................................... 3

      A.    Legal Standard ........................................................................................... 3

      B.    There is no private right of action for violation of the discharge injunction……………………………………………………………..…….. 4

      C.    The FAC's remaining claims should be dismissed because they are "simultaneous" or "functionally equivalent" to the § 524 Claim……………..5

      D.    An adversary proceeding is an improper vehicle for asserting a violation of the discharge inuction ........................................................................... 8

      E.    The FAC fails to plausibly allege facts demonstrating that Key had no objectively reasonable basis for believing the Loans were not discharged...... 9

      F.    The FAC is barred by the doctrine of judicial estoppel ................................ 11

          i.   The FAC takes a position tht is clearly inconsistent with the characterization of the Loans in the Petition ............................... 12

          ii.  The court accepted Davis's initial position by granting the Discharge.... 13

      G.    The FAC fails to allege facts demonstrating that the Loans were discharged ................................................................................................. 14

          i.   The Discharge Order states that some debts, including most student loans, are not discharged ................................................ 15

          ii.  The FAC does not plausibly allege that the Loans are not "qualified education loans" ...................................................... 15

      H.    The FCRA claim should be dismissed because it involves an unsettled legal question ..................................................................................................... 16

      I.    The NDTPA claim also fails because the NDTPA does not apply ................ 18

V.      CONCLUSION ................................................................................................... 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andrada Fin., LLC v. Humara Group, Inc. (In re Andrada Fin., LLC)*,
    BAP No. AZ-10-1209-JuMkPa, 2011 Bankr. LEXIS 1779 (B.A.P. 9th Cir.
    Apr. 7, 2011) ................................................................................................................4, 11

*Baeza v. Bank of Am. N.A.*,
    No. 3:11-cv-767-RCJ-VPC, 2012 U.S. Dist. LEXIS 131165 (D. Nev. Sept. 14,
    2012) ...............................................................................................................................19

*Barnes v. Belice (In re Belice)*,
    461 B.R. 564 (B.A.P. 9th Cir. 2011) ..........................................................................3, 4

*Barrientos v. Wells Fargo Bank, N.A.*,
    633 F.3d 1186 (9th Cir. 2011) ....................................................................................5, 8

*Berkowitz v. Bayview Loan Servicing, LLC*,
    No. 2:13-cv-00759, 2014 U.S. Dist. LEXIS 102494 (D. Nev. July 25, 2014) ..........7

*Biery v. Beneficial Kentucky, Inc. (In re Biery)*,
    13-ap-2005, 2013 Bankr. LEXIS 3622 (Bankr. E.D. Ky. Aug. 29, 2013) ................9

*Bridge v. Credit One Fin.*,
    294 F. Supp. 3d 1019 (D. Nev. 2018) .......................................................................19

*Brown v. Transworld Sys., Inc.*,
    73 F.4th 1030 (9th Cir. 2023) ...............................................................4, 5, 6, 7, 8

*Cave v. Valley Collection Servs. LLC*,
    No. 15-cv-00390, 2015 U.S. Dist. LEXIS 185146 (D. Ariz. June 18, 2015) ...........7

*Chaney v. Bayview Loan Servicing, LLC*,
    No. 2:16-cv-01418, 2017 U.S. Dist. LEXIS 216423 (D. Nev. March 14, 2017) ......7

*In re Chaussee*,
    399 B.R. 225 (B.A.P. 9th Cir. 2008) .........................................................................6

*Diamond Z Trailer, Inc. v. JZ L.L.C. (In re JZ L.L.C.)*,
    371 B.R. 412 (B.A.P. 9th Cir. 2007) ...................................................................12, 13

*Gage v. Cox Commc'ns, Inc.*,
    No. 2:16-cv-02708-KJD-GWF, 2017 U.S. Dist. LEXIS 63820 (D. Nev. Apr.
    26, 2017) ..................................................................................................................18, 19

*Garcia v. Equifax Info. Servs., LLC,*
    No. 2:17-cv-03123-JAD-VCF, 2020 U.S. Dist. LEXIS 252995 (D. Nev. Mar.
    23, 2020) (Dorsey, J.) ..........................................................................................17

*Gryglak v. HSBC Bank USA, N.A.,*
    No. 2:17-cv-1514, 2018 U.S. Dist. LEXIS 234782 (D. Nev. Feb. 23, 2018)...........................5

*Hamilton v. State Farm Fire & Cas. Co.,*
    270 F.3d 778 (9th Cir. 2001) ...........................................................................12, 13

*Harvey v. AllianceOne Receivables Mgmt.,*
    No. 10-cv-5091, 2011 U.S. Dist. LEXIS 77760 (E.D. Wash. July 18, 2011) ..........................8

*In re Hazelton,*
    622 B.R. 354 (Bankr. D. Wisc. 2020)...................................................................10

*Hye Rhee Kong v. Kelkris Assocs. (In re Hye Rhee Kong),*
    No. 08-50127-SLJ, Adv. No. 13-5119-SLJ, 2013 Bankr. LEXIS 5493 (Bankr.
    N.D. Cal. Nov. 15, 2013) ................................................................................8

*Integra Med Analytics LLC v. Providence Health & Servs.,*
    854 Fed. App'x 840 (9th Cir. 2021) (unpublished) ................................................16

*Johnson v. Transunion,*
    No. 1:22-cv-02533-JPB-JKL, 2023 U.S. Dist. LEXIS 140715 (N.D. Ga. Aug.
    11, 2023) ..................................................................................................18

*Khurana v. Idaho, Dep't of Health & Welfare (In re Khurana),*
    Nos. ID-18-1196-BGF, ID-19-1004-BGF, ID-19-1093-BGF, 2019 Bankr.
    LEXIS 3935 (B.A.P. 9th Cir. Dec. 16, 2019) ......................................................8

*Knupfer v. Lindblade,*
    322 F.3d 1178 (9th Cir. 2003) ..........................................................................5

*Kopf v. Nationstar Mortg. LLC,*
    No. 18-cv-185, 2018 U.S. Dist. LEXIS 160317 (S.D. Cal. Sept. 18, 2018)...........................8

*Mader v. Experian Info. Sols.,*
    56 F.4th 264, 266 (2d Cir. 2023) .............................................11, 15, 16, 17, 18

*Manikan v. Peters & Freeman, L.L.P.,*
    981 F.3d 712 (9th Cir. 2020) ............................................................................6

*In re Mellem,*
    625 B.R. 172 (B.A.P. 9th Cir. 2021)...................................................................10

*Miller v. 4Internet,*
    471 F. Supp. 3d 1085 (D. Nev. 2020)..............................................................4, 15

*Mortland v. Aughney (In re Aughney)*,
No. C 11-00743, 2011 U.S. Dist. LEXIS 74505 (N.D. Cal. July 6, 2011) ...............................9

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ............................................................................................................11, 13

*Organic Cannabis Found., LLC v. Comm'r*,
962 F.3d 1082 (9th Cir. 2020) .....................................................................................................2

*Patton v. Citizen Bank, N.A.*,
No. 2:18-cv-01351, 2019 U.S. Dist. LEXIS 104830 (D. Nev. June 24, 2019) ...................6, 7

*Plise v. Krohn (In re Plise)*,
No. NV-14-1474-DJuku, 2015 Bankr. LEXIS 1145 (B.A.P. 9th Cir. Apr. 6,
2015) ...........................................................................................................................................11

*In re Polvorosa*,
621 B.R. 1 (Bankr. D. Nev. 2020) ..............................................................................................11

*Shetty v. Lewis*,
704 Fed. App'x 687 (9th Cir. 2017) (unpublished) .....................................................................4

*Sobayo v. Nguyen (In re Sobayo)*,
BAP No. NC-20-1151-BSG, 2021 Bankr. LEXIS 1610 (B.A.P. 9th Cir. June
9, 2021) .........................................................................................................................................4

*Stroh v. Grant (In re Stroh)*,
34 Fed. App'x 562 (9th Cir. 2002) (unpublished) .............................................................12, 13

*Taggart v. Lorenzen*,
139 S. Ct. 1795,1799, 1801-02 (2019) ........................................................................................9

*In re Taggart*,
980 F.3d 1340 (9th Cir. 2020) ....................................................................................................10

*United Student Aid Funds, Inc. v. Espinosa*,
559 U.S. 260 (2010) ...................................................................................................................14

*Walls v. Wells Fargo Bank, N.A.*,
276 F.3d 502 (9th Cir. 2002) ........................................................................................5, 6, 7, 8

*Zappia v. World Sav. F.S.B.*,
No. 14cv1428 WQH (DHB), 2015 U.S. Dist. LEXIS 189828 (S.D. Cal. June
19, 2015) .......................................................................................................................................8

**Statutes**

11 U.S.C. § 105(a) .............................................................................................................................4

11 U.S.C. § 523 et seq.................................................................................13, 14

11 U.S.C. § 524...............................................................1, 2, 4, 5, 6, 7, 8

20 U.S.C. § 1087 (1) through (3) (1993) ..............................................16

20 U.S.C. § 1087|| (1986) .....................................................................16

*Bankruptcy Code section 523(a)(8)* ...............................................14, 17

Fair Credit Reporting Act ........................................1, 5, 7, 16, 17, 18

Fair Debt Collection Practices Act .......................................................6

Higher Education Act of 1965 section 472, 20 U.S.C. 1087 ................15

Internal Revenue Code section 221(d)(1) .......................................14, 15

Nev. Rev. Stat. § 41.600 .................................................................18, 19

Nev. Rev. Stat. § 80.015(1)(h) ............................................................19

Nev. Rev. Stat. § 598.095(15).............................................................18

Nev. Rev. Stat. § 598.0923(1)(c) ........................................................18

Nev. Rev. Stat. §§ 598.0915 to 598.0925 ...........................................19

Nev. Rev. Stat. § 598.0923 ..................................................................19

Nev. Rev. Stat. § 598.0923(1)(c) ........................................................18

Nevada Deceptive Trade Practices Act.......................1, 2, 5, 7, 18, 19, 20

Taxpayer Relief Act of 1997................................................................15

**Other Authorities**

Bankr. R. 7012(b) ...................................................................................3

Fed. R. Civ. P. 12(b)(6).........................................................................3

Fraud Upon *Borrowers* .......................................................................19

Federal Rules of Bankruptcy Procedure Rule 23..................................9

Federal Rules of Bankruptcy Procedure Rule 7023..............................9

Federal Rules of Bankruptcy Procedure Rule 9014...........................8, 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

After (i) filing a bankruptcy petition ("Petition") identifying the student loans at issue ("Loans") as "Student Loans," inserting the extra descriptor of "Educational," and declaring under oath that the information was true and correct; and (ii) voluntarily making payments for years before claiming that the Loans were discharged, Plaintiff Amanda Davis ("Davis") filed this action claiming that Key violated state and federal law by attempting to collect the amounts due on the Loans and furnishing information on the Loans to consumer reporting agencies ("CRAs"). The First Amended Complaint ("FAC," ECF No. 1) should be dismissed.

The FAC should be dismissed because: (1) there is no private right of action for a violation of the discharge injunction; (2) the FAC's other claims are functionally equivalent to the § 524 Claim; (3) an adversary proceeding is not the appropriate vehicle to pursue remedies for violation of the discharge injunction; (4) the FAC fails to plausibly allege that Key lacked an objectively reasonable basis for believing the Loans were not discharged; (5) the claims are barred by judicial estoppel; (6) the FAC fails to allege facts that allow the Court to reasonably infer that the Loans were discharged; (7) the FCRA claim rests on an unsettled legal question; and (8) the NDTPA does not apply.

### II.  PROCEDURAL POSTURE

On September 28, 2022, Davis filed a Complaint in the United States District Court for the District of Nevada ("District Court"). On November 4, 2022, Davis filed the FAC and in response, Key filed a Motion to Dismiss. On May 22, 2023, the District Court entered an Order denying the Motion to Dismiss without prejudice and referring the case to this Court where Davis re-filed the FAC on July 17, 2023. Davis asserts claims on behalf of herself and a putative nationwide class she seeks to represent claiming Key violated the Fair Credit Reporting Act ("FCRA"), the

bankruptcy discharge injunction under 11 U.S.C. § 524(a)(2) ("§ 524 Claim"), the Nevada Deceptive Trade Practices Act ("NDTPA"), and also asserting that Key is liable for unjust enrichment.

### III.    FACTUAL ALLEGATIONS

In 2005, Davis enrolled at the College of Saint Rose and obtained the Loans from Key in the amount of $10,752.68 to pay for living expenses. [ECF No. 1, ¶¶ 22-24].

On November 16, 2018, Davis filed the Petition and the Loans "were scheduled in the bankruptcy and defendants received notice of the bankruptcy." [ECF No. 1, ¶ 26]. The Petition, attached as Exhibit A, identified the Loans as "student loans" and included an extra descriptor that the Loans were "Educational." [Ex. A, p. 24]. Davis signed the Petition, declaring "under penalty of perjury that the information is true and correct." [Ex. A, p. 6].

The Petition incorporated "the instruction booklet," which is available online[1] and attached as Exhibit B,[2] that explains that the Bankruptcy Court collects information about categories of unsecured claims for statistical reasons. The instructions explain that "*Nonpriority unsecured claims*" include "educational loans" [Exhibit B, p. 24] and that the "categories for nonpriority unsecured claims" include "Student loans—If you owe money for any loans that you used to pay for your education" [*Id.* at p. 25]. The Petition captured this statistical information, and the amount Davis disclosed (*i.e.*, $91,623) included the Loans. [Exhibit A, p. 37]. Put simply, Davis represented to the Court and Key that the Loans were "student loans," "educational," and used "to pay for [her] education."

---

[1] https://www.uscourts.gov/sites/default/files/instructions_individuals.pdf (last visited September 27, 2023).

[2] The Court can take judicial notice of official information posted on a government website that is not subject to reasonable dispute. *See Organic Cannabis Found., LLC v. Comm'r*, 962 F.3d 1082, 1096 (9th Cir. 2020) (citations omitted).

Unsurprisingly, given the description of the Loans as educational as set forth by Davis when she filed the Petition in 2018, Key did not initiate an adversary proceeding to have the Court decide whether the Loans were dischargeable. [ECF No. 1, ¶ 29]. On February 26, 2019, Davis received an Order of Discharge ("Discharge Order"), attached as Exhibit C. [ECF No. 1, ¶ 31]. The Discharge Order does not state that the Loans were discharged. [*See* Ex. C]. Instead, it states that "**Some debts are not discharged**" and that "Examples of debts that are not discharged are . . . debts for most student loans . . . [and] debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case." [*Id*.] (emphasis in original).

The FAC alleges that after the Discharge Order, Key reported the Loans to the CRAs as current with an outstanding balance and that "[d]ue to Defendant's continued reporting of [the Loans] as due and owing Plaintiff has continued to make payments on the discharged debt in an effort to remove the negative reporting from her credit report." [ECF No. 1, ¶¶ 33, 35].

More than three years after the Discharge Order, in July 2022, Davis "disputed the inaccurate reporting…by notifying Trans Union and Experian, in writing, of the inaccurate, misleading, and derogatory information" ("Dispute"). [ECF No. 1, ¶ 143]. The FAC alleges that the CRAs notified Key of the Dispute and that, had Key conducted a reasonable investigation, it would have realized that the Loans were discharged. [ECF No. 1, ¶¶ 145-48]. Instead, Key did not update the reporting for the Loans. [*Id.* at ¶ 149].

## IV.    ARGUMENT

### A.  Legal standard.

Fed. R. Civ. P. 12(b)(6) applies to motions to dismiss adversary proceedings. Bankr. R. 7012(b); *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 573 (B.A.P. 9th Cir. 2011). In evaluating a motion to dismiss, the Court must first "accept as true all well-pled factual allegations in the

complaint, recognizing that legal conclusions are not entitled to the assumption of truth." *Miller v. 4Internet*, 471 F. Supp. 3d 1085, 1088 (D. Nev. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). *See also In re Belice* at 573 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007) (The "court is not bound by conclusory statements, statements of law, or unwarranted inferences cast as factual allegations.")). Second, "the court must consider whether the well-pled factual allegations state a plausible claim for relief. A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct." *Id.* at 1089 (citing *Iqbal*, 556 U.S. at 678-79).

A court can take judicial notice of certain public records and bankruptcy court filings without converting this motion into one motion for summary judgment. *Sobayo v. Nguyen (In re Sobayo)*, BAP No. NC-20-1151-BSG, 2021 Bankr. LEXIS 1610, *10 (B.A.P. 9th Cir. June 9, 2021); *Shetty v. Lewis,* 704 Fed. App'x 687, 687 (9th Cir. 2017) (unpublished). Additionally, a court can dismiss an adversary complaint based on judicial estoppel. *Andrada Fin., LLC v. Humara Group, Inc.*, *(In re Andrada Fin., LLC)*, BAP No. AZ-10-1209-JuMkPa, 2011 Bankr. LEXIS 1779, *16-18 (B.A.P. 9th Cir. Apr. 7, 2011).

### B.  There is no private right of action for violation of the discharge injunction.

The FAC asserts a claim based on Key's alleged violation of the bankruptcy discharge injunction of 11 U.S.C. § 524. [ECF No. 1, ¶¶ 163-165]. It is well established that "a debtor who alleges a violation of a bankruptcy court's discharge order has no private right of action under 11 U.S.C. § 524" and, instead, "[t]he appropriate remedy is contempt of court against the offending creditor pursuant to 11 U.S.C. § 105(a)." *Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1038 (9th Cir. 2023) (citing *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 506-09 (9th Cir. 2002)). Indeed, "[b]ecause § 105 allows 'an aggrieved debtor to obtain compensatory damages, attorneys fees, and

the offending creditor's compliance with the discharge injunction,' 'no further remedy is necessary.'" *Id.* (quoting *Walls*, 276 F.3d at 507).[3]

In *Brown*, a debtor alleged that a creditor violated § 524 when it attempted to collect on student loans that were discharged (Count III) and requested declaratory and injunctive relief (Count IV). *Brown*, 73 F.4th at 1036-37. The Court affirmed dismissal of both claims, explaining that "Brown's Count III claim…is squarely precluded by the first holding in *Walls*" and that "Count IV…, which seeks declaratory and injunctive relief on the basis of Count III, also fails because these remedies are not standalone claims[.]" *Id.* at 1038. *See also Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188 (9th Cir. 2011); *Knupfer v. Lindblade*, 322 F.3d 1178, 1190 (9th Cir. 2003); *Gryglak v. HSBC Bank USA, N.A.*, No. 2:17-cv-1514, 2018 U.S. Dist. LEXIS 234782, at *13 (D. Nev. Feb. 23, 2018).

Because there is no such private right of action for violation of 11 U.S.C. § 524, the FAC should be dismissed.

### C. The FAC's remaining claims should be dismissed because they are "simultaneous" or "functionally equivalent" to the § 524 Claim.

The FAC alleges that Key violated the FCRA by continuing to report the Loans to the CRAs as if they had not been discharged after receiving the Dispute (FAC, ¶¶ 139-58), is liable for unjust enrichment because it collected on discharged loans (*id.* at ¶¶ 160-61) and violated the NDTPA by falsely representing Davis's "rights and obligations regarding the discharged debts, and by taking legal action [it was] not entitled to take to collect the alleged debts" (*id.* at ¶¶ 168-

---

[3] The FAC demands a jury trial when the law is clear that one reason why there is no private right of action for violation of the discharge injunction is that enforcement of the discharge injunction could then be "in the hands of a court that did not issue it (perhaps even in the hands of a jury), which is inconsistent with the present scheme that leaves enforcement to the bankruptcy judge whose discharge order gave rise to the injunction." *Brown*, 73 F.4th at 1038 (quoting *Walls*, 276 F.3d at 509).

5

70). These claims should all be dismissed.

In addition to holding that there is no private right of action for a violation of the discharge injunction, the Court in *Walls* also held that a plaintiff cannot maintain "simultaneous" claims that assert the same theory as a § 524 claim but that are brought under the auspices of another cause of action. 276 F.3d at 510. The plaintiff in *Walls* alleged that the defendant violated the Fair Debt Collection Practices Act ("FDCPA") by attempting to collect on a discharged debt. *Id.* The Ninth Circuit said that there was "no escaping that Walls's FDCPA claim is based on an alleged violation of § 524" and that resolving the FDCPA claim would include "bankruptcy-laden determinations" for which the Bankruptcy Code provided its own remedies. *Id.* at 510-11. *Walls* concluded that permitting a simultaneous claim, "no matter how cast," "would allow through the back door what Walls cannot accomplish through the front door – a private right of action." *Id. See also Manikan v. Peters & Freeman, L.L.P.*, 981 F.3d 712, 717 (9th Cir. 2020); *In re Chaussee*, 399 B.R. 225, 236-37 (B.A.P. 9th Cir. 2008); *Patton v. Citizen Bank, N.A.*, No. 2:18-cv-01351, 2019 U.S. Dist. LEXIS 104830, at *4-6 (D. Nev. June 24, 2019).

In *Brown*, the plaintiff alleged that the defendant violated the FDCPA by attempting to collect on discharged student loans and in filing a debt collection lawsuit when it did not have standing. *Brown*, 73 F.4th 1037-38. The plaintiff attempted to avoid *Walls* by arguing that it was narrowed by *Manikan*, in which the Court held that a claim is not barred if it is not based on a violation of the discharge order. *Brown*, 73 F.4th at 1039. The Court clarified its holding in *Manikan*, explaining that the reason the claims in *Manikan* survived was because the debt in that case was paid in full and, thus, the claims would have been viable had the discharge order never existed. In upholding dismissal of the claims in *Brown*, the Court explained that "Brown cannot make the same argument" because his "claim necessarily requires a determination of whether the

debt was discharged," as evidenced by the fact that the class definition in *Brown* required each class member to have received a discharge. *Id.* at 1039. Because allowing the plaintiff's claim "to proceed would 'circumvent the remedial scheme of the [Bankruptcy] Code under which Congress struck a balance between the interests of debtors and creditors by permitting (and limiting) debtor's remedies for violating the discharge injunction to contempt[,]'" the Court held that the claims failed as a matter of law. *Id.*

The FAC's remaining claims attempt to do exactly what was rejected in both *Walls* and *Brown*. The FAC's other causes of action are based upon the same flawed universal theory: that Key engaged in wrongdoing by collecting on the allegedly discharged Loans and reporting them as current. [ECF No. 1, ¶¶ 32-34]. Specifically, the FAC's First Cause of Action alleges Key violated the FCRA when it "reported that the status of the debts were 'current' and reflecting owed balances, i.e. still legally collectable, as opposed to 'Discharged in Bankruptcy.'" [*Id.* at ¶ 140]. The FAC's Second Cause of Action for unjust enrichment alleges Davis was damaged because Key was "collecting funds that were discharged in bankruptcy." [*Id.* at ¶ 160]. The FAC's Fourth Cause of Action for a violation of the NDTPA alleges that Key falsely represented that the Loans were not discharged and took "legal action [it was] not entitled to take to collect[.]" [*Id.* at ¶ 168].

The FAC's remaining claims, while cast under a different name, are "simultaneous" or "functionally equivalent" to the § 524 Claim. As a result, these claims should be dismissed. *See Chaney v. Bayview Loan Servicing, LLC*, No. 2:16-cv-01418, 2017 U.S. Dist. LEXIS 216423, at *1 (D. Nev. March 14, 2017); *Patton*, 2019 U.S. Dist. LEXIS 104830, at *4-6; *Berkowitz v. Bayview Loan Servicing, LLC*, No. 2:13-cv-00759, 2014 U.S. Dist. LEXIS 102494, at *6-9 (D. Nev. July 25, 2014). Courts outside of Nevada agree. *See Cave v. Valley Collection Servs. LLC*, No. 15-cv-00390, 2015 U.S. Dist. LEXIS 185146, at *3-5 (D. Ariz. June 18, 2015); *Kopf v.*

*Nationstar Mortg. LLC*, No. 18-cv-185, 2018 U.S. Dist. LEXIS 160317, at *3-5 (S.D. Cal. Sept. 18, 2018); *Harvey v. AllianceOne Receivables Mgmt.*, No. 10-cv-5091, 2011 U.S. Dist. LEXIS 77760, at *2-8 (E.D. Wash. July 18, 2011).

      **D.  An adversary proceeding is an improper vehicle for asserting a violation of the discharge injunction.**

      The FAC must also be dismissed because a debtor who alleges a violation of the discharge order must file a motion for contempt in the debtor's bankruptcy case rather than an adversary proceeding. *See, e.g.*, *Barrientos*, 633 F.3d at 1188-1191 (affirming district court's dismissal of complaint claiming violations of the discharge injunctions, and explaining that "[a] motion for contempt for violation of a discharge injunction under § 524 ***must*** be brought via motion in the bankruptcy case, not via an adversary proceeding) (emphasis added); *Brown*, 73 F.4th at 1038 ("the appropriate remedy" for violating the discharge injunction is "contempt of court"); *Walls*, 276 F.3d at 507 (same); *see also Khurana v. Idaho, Dep't of Health & Welfare (In re Khurana)*, Nos. ID-18-1196-BGF, ID-19-1004-BGF, ID-19-1093-BGF, 2019 Bankr. LEXIS 3935, at *21 (B.A.P. 9th Cir. Dec. 16, 2019) (affirming bankruptcy court's dismissal of "procedurally improper" adversary proceeding alleging violation of discharge injunction and explaining that "contempt proceedings for violation of the discharge injunctions must be initiated by motion under Rule 9014 and not by adversary proceeding"); *Kopf*, 2018 U.S. Dist. LEXIS 160317, at *3; *Zappia v. World Sav. F.S.B.*, No. 14cv1428 WQH (DHB), 2015 U.S. Dist. LEXIS 189828, at *53 (S.D. Cal. June 19, 2015); *Hye Rhee Kong v. Kelkris Assocs. (In re Hye Rhee Kong)*, No. 08-50127-SLJ, Adv. No. 13-5119-SLJ, 2013 Bankr. LEXIS 5493, at *6 (Bankr. N.D. Cal. Nov. 15, 2013).

      This distinction is particularly important in the class action context. If Davis had properly brought her discharge injunction claim by motion and thereby initiated a contested matter in her bankruptcy case, the decision whether to allow class allegations in the first instance would be

8

"highly discretionary" instead of "mandatory." *See*, *e.g.*, *Biery v. Beneficial Kentucky, Inc. (In re Biery)*, 13-ap-2005, 2013 Bankr. LEXIS 3622, at *7-9 (Bankr. E.D. Ky. Aug. 29, 2013) (dismissing discharge injunction claim brought in adversary proceeding and explaining that Rule 9014 gives the Court discretion not to invoke Rule 7023 in a contested matter, and that "bankruptcy courts routinely exercise their discretion not to invoke Rule 7023 in contested matters before even deciding whether its certification requirements have been satisfied") (collecting cases); *see also Mortland v. Aughney (In re Aughney)*, No. C 11-00743, 2011 U.S. Dist. LEXIS 74505, at *6 (N.D. Cal. July 6, 2011) (affirming bankruptcy court's decision not to apply Rule 7023 to contested matter and explaining that "Bankruptcy Rule 9014 allows a court to apply bankruptcy rules to a 'contested matter not otherwise governed by these rules.' Thus, a bankruptcy court has *discretion* to apply Rule 23 via Rule 7023 via Rule 9014.") (emphasis in original).

Here, however, the FAC seeks to bypass Ninth Circuit authority and Rule 9014 entirely. For these reasons, the FAC must be dismissed.

### E. The FAC fails to plausibly allege facts demonstrating that Key had no objectively reasonable basis for believing the Loans were not discharged.

In *Taggart v. Lorenzen*, the Supreme Court explained that civil contempt is a "severe remedy" that requires "those enjoined [to] receive explicit notice of what conduct is outlawed before being held in civil contempt" and that as a result, "a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." 139 S. Ct. 1795, 1799, 1801-02 (2019). On remand in *Taggart*, the Ninth Circuit explained that the Supreme Court set a "significantly high hurdle" for imposing civil contempt. *In re Taggart*, 980 F.3d 1340, 1347 (9th Cir. 2020). Indeed, "[t]he ultimate burden of persuasion remains on the

movant to show, per *Taggart*, no objectively reasonable basis for concluding that the alleged contemnor's conduct might be lawful under the discharge order." *In re Mellem*, 625 B.R. 172, 178 (B.A.P. 9th Cir. 2021).

Even if the Loans were discharged, this Court should dismiss the FAC should be because it does not plausibly allege facts demonstrating that Key lacked an objectively reasonable basis for concluding that the Loans were not discharged. The documents of which this Court can take judicial notice demonstrate precisely the opposite.

Davis *did not* describe the Loans in her bankruptcy schedules as "mixed-use" loans. Davis *did not* seek a dischargeability finding with respect to the Loans. Davis *did not* file an adversary proceeding contending that the Loans were dischargeable. Instead, Davis specifically identified the Loans in her bankruptcy schedules as "Student Loans" which she described as "Educational" [Ex. A, p. 24], and she continued to make payments on the Loans for years after entry of the Discharge Order [ECF No. 1, ¶¶ 33, 35]. Far from plausibly alleging facts demonstrating that Key knew or should have known the Loans were allegedly discharged, the facts alleged in the FAC, and the documents incorporated therein by reference, demonstrate that Key had a reasonable basis to conclude the Loans, like most student loans, were nondischargeable. *See*, *e.g.*, *In re Hazelton*, 622 B.R. 354, 358, 363 (Bankr. D. Wisc. 2020) (holding there was fair ground of doubt as to whether creditor's post-bankruptcy collection actions violated discharge injunction when creditor relied on debtor's schedules which merely referred to debt as "student loans" and debtor waited nearly five months before raising the issue of the creditor's alleged violation of the discharge injunction). This conclusion is bolstered by the Discharge Order which, by its plain terms, did not specifically discharge the Loans and, instead, states that "**Some debts are not discharged**," including "debts for most student loans." [Ex. C]. *See Mader v. Experian Info. Sols.*, Inc., 56 F.4th

264, 266 (2d Cir. 2023); *see also In re Polvorosa*, 621 B.R. 1, 8 (Bankr. D. Nev. 2020) (movant must demonstrate that party violated a "specific and definite order").

Davis does not plausibly allege facts demonstrating that Key did not have an objectively reasonable basis for concluding that the Loans were discharged. The FAC should be dismissed.

### F.  The FAC is barred by the doctrine of judicial estoppel.

The FAC is premised on the allegation that the Loans were not "qualified educational loans" and were, thus, discharged. [*See generally*, ECF No. 1]. "'Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). Judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment," *id.* (quotation marks omitted), and it "protect[s] against a litigant playing fast and loose with the courts by asserting inconsistent positions," *Plise v. Krohn (In re Plise)*, No. NV-14-1474-DJuku, 2015 Bankr. LEXIS 1145, at *23 (B.A.P. 9th Cir. Apr. 6, 2015) (citations and quotations omitted).

Courts analyzing judicial estoppel will "consider: (1) whether a party's position is clearly inconsistent with its earlier position; (2) whether the first court accepted the party's earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped." *In re Andrada Fin., LLC*, 2011 Bankr. LEXIS 1779, *17. "[J]udicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) (citations omitted). *See also Stroh v. Grant (In re Stroh)*, 34 Fed. App'x 562, 565 (9th Cir. 2002) (unpublished).

"It is settled that the debtor has a duty to prepare…bankruptcy schedules and statements carefully, completely, and accurately," *Diamond Z Trailer, Inc. v. JZ L.L.C. (In re JZ L.L.C.)*, 371 B.R. 412, 417 (B.A.P. 9th Cir. 2007) (citation and quotation omitted), "because that is the initial information upon which all creditors rely" when "plan[ning] their actions in the bankruptcy proceeding" and upon which a bankruptcy court will rely in making certain decisions. *Hamilton*, 270 F.3d at 785 (quoting *Browning Mfg. v. Mims (In re Coastal Plains)*, 179 F.3d 197, 208 (5th Cir. 1999)). On the second factor – whether a court accepted the litigant's initial position, a bankruptcy court's grant of a discharge is sufficient acceptance of the statements and disclosures made by a debtor in his or her bankruptcy schedules to provide a basis for judicial estoppel. *Hamilton*, 270 F.3d at 784; *Stroh*, 34 Fed. App'x at 565. With regard to the third factor, courts have stated that "[t]he debtor need only have gained some advantage through the court's acceptance of the initial position, such as plan confirmation or grant of discharge." *In re JZ L.L.C.*, 371 B.R. at 421.

### i. The FAC takes a position that is clearly inconsistent with the characterization of the Loans in the Petition.

Davis had an obligation to prepare the Petition "carefully, completely, and accurately" because creditors such as Key would rely on that information when deciding how to proceed in the bankruptcy, and the Court would rely on the information when deciding whether to grant a discharge. *In re JZ L.L.C.*, 371 B.R. at 417; *Hamilton*, 270 F.3d at 785. When purportedly complying with that obligation, Davis described the Loans, under oath, as "student loans" and as "educational," a description not included in the bankruptcy form but specifically added by Davis; and she included the amounts of the Loans in the portion of the Petition reserved for "nonpriority unsecured claims includ[ing] educational loans" that were "used to pay for [her] education." [Exhibit A, pp. 6, 24; Exhibit B, pp. 24, 25].

12

In the FAC, Davis does an about face, claiming the Loans were not used to pay for her cost of attendance and, as a result, are not "qualified education loans." [ECF No. 1, ¶¶ 23, 25]. Because the FAC takes a position that is "clearly inconsistent" with the Petition, the first element of judicial estoppel is evident. *New Hampshire*, 532 U.S. at 749.

ii.   *The Court accepted Davis's initial position by granting the Discharge.*

The Petition was filed on November 16, 2018. [ECF No. 1, ¶ 26; Exhibit A]. Three months later, Davis received the Discharge Order. [ECF No. 1, ¶ 31]. The Court's decision to grant the Discharge Order was sufficient acceptance of Davis's statements that the Loans were "student loans," "educational," and used "to pay for [her] education." And, thus, disclosures in the Petition serve as a clear basis for applying judicial estoppel to bar her claims here. *Hamilton*, 270 F.3d at 784; *Stroh*, 34 Fed. App'x at 565.

iii.   *Adoption of Davis's inconsistent positions would result in unfair advantage or unfair detriment.*

The Petition identified the Loans as educational student loans, a description that was required to be careful, complete, and accurate because it was information upon which Key, the chapter 7 trustee, and other creditors and parties-in-interest would rely in choosing how to proceed in Davis's bankruptcy. *In re JZ L.L.C.*, 371 B.R. at 417; *Hamilton*, 270 F.3d at 785. Based on Davis's description of the Loans in the Petition, it is unsurprising that Key "did not file any proceedings to declare [the Loans] 'nondischargeable' pursuant to 11 U.S.C. § 523 et seq." [ECF No. 1, ¶ 29].

Describing the Loans as "educational" "student loans" was integral to Davis's ability to obtain a discharge without Key filing an adversary proceeding to challenge the self-executing[4] expectation that the Loans were not dischargeable. A creditor should not be lulled into forgoing a dischargeability determination, only to find itself in unanticipated post-bankruptcy litigation addressing the dischargeability of certain obligations scheduled in the Petition when that scheduling gives rise to a reasonable expectation that the Loan's status as educational student loans would render them non-dischargeable. The doctrine of judicial estoppel protects against such sharp practices that lure creditors such as Key into a false sense of security when it otherwise could have initiated an adversary proceeding to allow the Court to decide whether the Loans were dischargeable. Because Davis's inconsistent positions would result in unfair advantage to Davis and unfair detriment to Key, the claims of the FAC are barred by the doctrine of judicial estoppel. The FAC should be dismissed.

### G. The FAC fails to allege facts demonstrating that the Loans were discharged.

Under the Bankruptcy Code, the application of a chapter 7 discharge to student loans is narrow. Chapter 7 does not discharge a debtor from any debt for "a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986." 11 U.S.C. § 523(a)(8).[5] Here, the FAC asserts that the Loans were not "qualified education loans" and were discharged. [ECF No. 1, ¶¶ 25, 31-32]. But simply alleging that the Loans were discharged or that they were not "qualified education loans" is insufficient because the Court cannot simply presume the truth of these legal conclusions. *Miller*, 471 F. Supp. 3d at 1088. The FAC must allege facts, not legal

---

[4] *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 274-75 (2010) (section 523(a)(8) is "self-executing" in that in the ordinary case, no action on the part of a student loan lender is required to ensure non-discharge of student loan debt).

[5] A debtor can attempt to discharge student loans by demonstrating that repayment of the loans would impose an undue hardship, an exception not relevant here.

conclusions, which demonstrate or allow the Court to reasonably infer that the Loans were discharged.

> i. *The Discharge Order states that some debts, including most student loans, are not discharged.*

The FAC refers to the Discharge Order and claims that the Loans were discharged. [ECF No. 1, ¶¶ 31-32]. But this Court cannot reasonably infer from the face of Davis's Chapter 7 Discharge Order that the Loans were automatically discharged. Davis's Discharge Order plainly states that "**Some debts are not discharged**," including "debts for most student loans." [Ex. C]. *Mader*, 56 F.4th 264 (recognizing that a standard bankruptcy discharge order that included the same language did not opine on whether the borrower's private educational loans were, in fact, discharged). Given the plain language of the Discharge Order, the Court cannot reasonably infer that the Loans were discharged.

> ii. *The FAC does not plausibly allege that the Loans are not "qualified education loans."*

The FAC fails to allege facts from which the Court can deduce that the Loans were anything other than qualified education loans. A "qualified education loan" is, among other things, a loan incurred "solely to pay qualified higher education expenses." 26 U.S.C. § 221(d)(1). The term "Qualified higher education expenses" means "the cost of attendance (as defined in section 472 of the Higher Education Act of 1965, 20 U.S.C. 1087, as in effect on the day before the date of the enactment of the Taxpayer Relief Act of 1997) at an eligible educational institution, reduced by gross income, and the amount of certain types of scholarships, allowances, or payments." *Id.* "Cost of attendance" is a broad term, and includes "tuition and fees," "an allowance for books, supplies, transportation, and miscellaneous personal expenses," and an allowance for "room and board costs" that differs depending on whether students have dependents or live off campus. 20 U.S.C. § 1087 (1) through (3) (1993). In sum, the FAC must state facts, not legal conclusions,

demonstrating that the Loans were not incurred solely to pay for Davis's cost of attendance, an amount that, by definition, includes miscellaneous personal expenses and room and board costs.

Here, the FAC alleges that Davis obtained the Loans to "pay for living expenses while attending St. Rose." [ECF No. 1, ¶ 24]. But living expenses can be part of the (non-dischargeable) "cost of attendance." 20 U.S.C. § 1087ll (1986). Further, while the FAC alleges that Davis paid for her "cost of attendance" with other federal student loans, "cost of attendance" is a legally defined term, and this allegation is a legal conclusion that the Court need not accept as true when considering a motion to dismiss. *Integra Med Analytics LLC v. Providence Health & Servs.*, 854 Fed. App'x 840, 844 (9th Cir. 2021) (unpublished) (citing *Iqbal*, 556 U.S. at 678).

The FAC admits that the Loans were used to pay living expenses, which are included in the definition of the "cost of attendance" for the purpose of determining whether the Loans were "qualified education loans," and the FAC is devoid of other facts to suggest that the Loans were somehow dischargeable. The FAC fails as a matter of law and should be dismissed.

### H. The FCRA claim should be dismissed because it involves an unsettled legal question.

The FAC alleges that Key violated the FCRA because, in relevant part, it did not report the Loans as discharged. [ECF No. 1, ¶¶ 32-33]. Because the FCRA claim is premised on an unsettled legal question, the FCRA claim fails as a matter of law.

In *Mader*, after obtaining a private student loan, the plaintiff listed the student loan in his bankruptcy petition. 56 F.4th 264, 266. The plaintiff received a discharge, but the order did not address the private student loan and, instead, said that "'[m]ost, but not all, types of debts are discharged,' but that '[d]ebts for most student loans' are not discharged." *Id.* The plaintiff made payments on the student loan for years, and the loan appeared on the plaintiff's consumer report as an outstanding debt. *Id.* The plaintiff then asserted an FCRA claim against Experian, claiming

it violated the FCRA by including the private student loan on his credit report. *Id.*

Like Davis, the plaintiff in *Mader* argued that his student loan "was discharged in bankruptcy because, as a private loan, it is not exempted from discharge under *section 523(a)(8) of the Bankruptcy Code*." *Mader*, 56 F.4th at 267 (emphasis in original). On summary judgment, the district court in *Mader* undertook a factual analysis to determine whether Mader's student loan was, in fact, dischargeable. *Id.* The Second Circuit said that analysis would have been an error (because the facts were disputed and, thus, summary judgment would have been inappropriate), but "affirm[ed] on the alternative ground that the legal inaccuracy alleged in this case is not cognizable under the FCRA." *Id.*

Like Davis, the plaintiff in *Mader* was required to "establish, among other things, that a credit report contains an inaccuracy." *Mader*, 56 F.4th at 269, citing *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021); *Garcia v. Equifax Info. Servs., LLC*, No. 2:17-cv-03123-JAD-VCF, 2020 U.S. Dist. LEXIS 252995, at *16 (D. Nev. Mar. 23, 2020) (Dorsey, J.).

Noting that the definition of "accuracy" "requires a focus on objectively and readily verifiable information[,]" the Court held that the inaccuracy alleged by Mader could not serve as the basis for an FCRA claim because "[t]here is no bankruptcy order explicitly discharging this debt. Navient continued to treat the debt as outstanding following Mader's bankruptcy. And, for that matter, so did Mader." *Id.* at 269. "Every other circuit to have considered an analogous question has agreed: inaccuracies that turn on legal disputes are not cognizable under the FCRA." *Id.* at 270 (citing *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891-92 (9th Cir. 2010); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015); *Denan v. Trans Union LLC*, 959 F.3d 290, 293-96 (7th Cir. 2020)). *See also Johnson v. Transunion*, No. 1:22-cv-02533-JPB-JKL, 2023 U.S. Dist. LEXIS

140715, at *8 (N.D. Ga. Aug. 11, 2023) ("the problem for Plaintiff is the accuracy of that information hinges entirely on whether the debt was discharged in bankruptcy, which, under the circumstances of his case, presents a legal issue and, therefore, is not actionable under" the FCRA).

Like the plaintiff in *Mader*, Davis identified the Loans in the Petition, the Bankruptcy Court was never asked to consider whether the Loans were dischargeable, and the Discharge Order says most student loans are not dischargeable. [Exhibit C]. Like the plaintiff in *Mader*, Davis continued to make payments on the Loans after the Discharge Order and treated the Loans as not having been discharged. Davis then initiated this action, in which the FAC alleges that Key violated the FCRA. Because the FCRA claim is premised on an unsettled legal question, like the plaintiff's FCRA claim in *Mader,* it fails as a matter of law and should be dismissed.

## I.    The NDTPA claim fails because the NDTPA does not apply.

The FAC alleges that Key violated Nev. Rev. Stat. §§ 598.095(15) and 598.0923(1)(c) by misrepresenting Davis's obligations on the Loans and attempting to collect on the Loans after they were allegedly discharged, and that these violations of the NDTPA constitute consumer fraud pursuant to Nev. Rev. Stat. § 41.600(2)(e). [ECF No. 1, ¶¶ 168-70.] This claim fails on its face.

The NDTPA only applies to transactions involving the sale or lease of good and services. *Gage v. Cox Commc'ns, Inc.*, No. 2:16-cv-02708-KJD-GWF, 2017 U.S. Dist. LEXIS 63820, at *5 (D. Nev. Apr. 26, 2017). Indeed, Nev. Rev. Stat. § 598.0923(1)(c), a provision on which the FAC relies, states that "[a] person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly: … Violates a state or federal statute or regulation relating to the sale or lease of goods or services." Nev. Rev. Stat. § 598.0915, another of the statutes on which the FAC relies, enumerates ways in which a seller of goods and services can commit a deceptive trade practice. For example, its list includes passing off goods or services as those of another, making false representations as to the source or sponsorship of goods or services, and

representing that goods are original or new while knowing that they are deteriorated. *See* Nev. Rev. Stat. § 598.0915. The FAC relies on this statute's catch-all provision, Nev. Rev. Stat. § 598.0915(15), which states that "[a] person engages in a 'deceptive trade practice' if, in the course of his or her business or occupation, he or she: … Knowingly makes any other false representation in a transaction." Considered in the context of the statute's other provisions, it is clear that Nev. Rev. Stat. § 598.0915(15) only applies when someone makes false representations when selling or leasing goods or services.

Additionally, Nev. Rev. Stat. § 41.600(2)(e), the provision on which the FAC relies to assert a cause of action, states that a victim of consumer fraud may bring an action and that "consumer fraud" includes a deceptive trade practice as defined in Nev. Rev. Stat. §§ 598.0915 to 598.0925. Tellingly, Nev. Rev. Stat. § 41.600 (and the statute that followed it and pertains to actions against sellers or manufactures of unapproved drugs), are housed under the heading: "Fraud Upon Purchasers; Misrepresentation" and not Fraud Upon *Borrowers*.

Finally, each of the provisions on which the NDTPA claim is based define a deceptive trade practice as requiring conduct committed "in the course of his or her business or occupation." *See* Nev. Rev. Stat. §§ 598.0915 and 598.0923. Attempts to collect a debt do not constitute doing business in Nevada. Nev. Rev. Stat. § 80.015(1)(h); *Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1025 (D. Nev. 2018); *Baeza v. Bank of Am. N.A.*, No. 3:11-cv-767-RCJ-VPC, 2012 U.S. Dist. LEXIS 131165, at *11 (D. Nev. Sept. 14, 2012); *Gage*, 2017 U.S. Dist. LEXIS 63820, at *5.

The FAC does not allege that Davis purchased or leased any goods or services from Key. Indeed, the only "transaction" that occurred between Davis and Key took place in 2005 when the Loans were originated, and none of the alleged wrongdoing set forth in the FAC relates to the Loans' origination. Moreover, the FAC's entire premise is based on the allegation that Key acted

improperly when it attempted to collect on the Loans, conduct that does not constitute transacting business in Nevada. Because there was no transaction involving the sale or lease of goods or services, the FAC does not allege facts sufficient to demonstrate that Key conducted business in Nevada, and Davis is not a "purchaser" to whom the consumer fraud provisions apply, the NDTPA fails as a matter of law and should be dismissed.

## V. <u>CONCLUSION</u>

WHEREFORE, Defendant KeyBank N.A. respectfully requests that this Court grant its Motion and dismiss the First Amended Complaint.

DATED: October 16, 2023

BENNETT TUELLER JOHNSON & DEERE

<u>/s/ Jared Inouye</u>
Jared Inouye
Nevada Bar No. 9067
3165 East Millrock Drive
Suite 500
Salt Lake City, UT 84121
Jinouye@btjd.com

THOMPSON HINE LLP
Jessica Salisbury-Copper (pro hac vice forthcoming)
10050 Innovation Drive, Suite 400
Dayton, OH 45342
Phone: (937) 443-6854
Jessica.Salisbury-Copper@ThompsonHine.com

Kip Bollin (pro hac vice forthcoming)
3900 Key Center
127 Public Square
Cleveland, OH 44114
Phone: (216) 566-5500
Kip.Bollin@ThompsonHine.com

Todd M. Seaman (pro hac vice forthcoming)
41 South High Street, Suite 1700
Columbus, OH 43215
Phone: 614.469.3200

20

Todd.Seaman@ThompsonHine.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I, Jared Inouye, served the foregoing **AMENDED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FILED BY DEFENDANT KEYBANK N.A. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on October 16, 2023, to all parties on the CM/ECF service list.

*/s/ Jared L. Inouye*
Jared L. Inouye

1

## <u>INDEX OF EXHIBITS</u>

2

3

Exhibit A        Bankruptcy Petition filed by Amanda Rae Davis in Case No. 18-16836-btb
             on November 16, 2018

4

5

Exhibit B        U.S. Bankruptcy Court – Instructions – Bankruptcy Forms for Individuals
             December 2015 (Rev. April 2022)

6

Exhibit C        Order of Discharge filed in the Amanda Rae Davis bankruptcy Case No. 18-
             16836-btb on February 26, 2019

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28