George Haines, Esq.
Nevada Bar No. 9411
FREEDOM LAW FIRM
8985 S. Eastern Ave., Suite 100
Las Vegas, NV 89123
Telephone: (702) 880-5554
Facsimile: (702) 385-5518
ghaines@freedomlegalteam.com
*Attorneys for Plaintiff*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE:<br>AMANDA RAE DAVIS,<br>               Debtor. | Case No. BK-S-18-16836-hlb<br>Chapter 7 |
| AMANDA DAVIS, individually and on behalf of all others similarly situated;<br><br>               Plaintiff,<br><br>               v.<br><br>KEYBANK N.A.; and KEYBANK TRUST d/b/a AMERICAN EDUCATION SERVICES LLC d/b/a KEYCORP STUDENT LOAN TRUST,<br><br>               Defendants. | Adversary Proceeding: 23-01110-hlb<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT AMERICAN EDUCATION SERVICES, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT<br><br>**Hearing Date: December 7, 2023**<br>**Hearing Time: 10:00 AM** |

      Plaintiff Amanda Davis ("Davis" or "Plaintiff), individually and on behalf of all others similarly situated, submits this response in Opposition to Defendant American Education Services, LLC's ("AES") Motion to Dismiss Plaintiff's First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure.

## I. INTRODUCTION

      Davis has filed this class action to obtain a declaration of her rights as specified in the discharge order. Additionally, she is invoking the contempt power of this Court due to a violation of that order.

1

Davis is also asserting that AES has infringed upon her rights under the Fair Credit Reporting Act ("FCRA") and has also violated the Nevada Deceptive Trade Practices Act ("NDTPA"). Finally, Davis is seeking remedies for unjust enrichment under Nevada common law.

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.' " *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991)). The bankruptcy order discharging all dischargeable debts issued in each case, which is an automatic injunction under 11 U.S.C. § 524(a), "thus advances the overarching purpose of the Bankruptcy Code. For that reason, the scope of the injunction is broad, and bankruptcy courts may enforce it through 11 U.S.C. § 105, any sanctions imposed for violations being in the nature of civil contempt." *In re Canning*, 706 F.3d 64, 69 (1st Cir. 2013) (cleaned up). Davis brings this case to "vindicate[] h[er] rights and those of thousands of people like h[er]" who have been denied the "fresh start' bankruptcy promises to those whose private student loans are not "qualified education loans" under the Bankruptcy Code. *In re Teran*, 649 B.R. 794, 799 (Bankr. N.D. Cal. 2023).

AES, the servicer of Davis's loan, argues that the Ninth Circuit's refusal to recognize a "private right of action" under § 524 also limits this Court's ability to use its equitable and contempt powers to provide relief when a plaintiff invokes them and alleges systematic violation of bankruptcy discharge orders, as Davis does here. AES next argues Davis cannot seek contempt in her bankruptcy case because this court has labeled it an adversary proceeding, and that Davis's other claims, including a claim under the FCRA and standalone state-law claims, must be dismissed because they are "functionally equivalent" to a § 524 claim, although no court has held so. AES attacks Davis's FCRA claim, asserts the affirmative defense of the voluntary payment doctrine as to the unjust enrichment claim, and attacks Davis's NDTPA claim. This effort by AES to evade responsibility for its repeated violations of this Court's bankruptcy discharge injunction and independent obligations under federal and state law should be rejected and its motion to dismiss denied.

First, Davis does not assert a prohibited "private right of action" based on § 524, but rather

seeks declaratory relief as well as enforcement of the bankrtupcy discharge injunction itself through the one means recognized in *Walls*: invocation of this Court's contempt powers. Second, Davis's contempt claim can be treated as a motion for contempt. Third, just as this claim based on violation of the bankruptcy discharge injunction is not a private right of action under § 524, Davis's standalone claims under the FCRA for unjust enrichment under state law, and under the NDTPA are not "functionally equivalent" to a § 524 claim. Fourth, Davis's FCRA claim does not fail as a matter of law because there is no unsettled legal question. Fifth, the voluntary payment doctrine does not apply to Davis's unjust enrichment claim. Sixth, the NDTPA claim is pled with particularity. Finally, the NDTPA does apply to the conduct alleged. For these reasons, AES's motion to dismiss Davis's FAC should be denied.

## II. RELEVANT FACTS

Amanda Davis enrolled at College of Saint Rose in 2005 for a Teacher Education Baccalaureate program. (ECF No. 1, ¶22). Davis paid for her cost of attendance with federal student loan funds. (*Id*. at ¶23). She also borrowed approximately $10,752.68 in private student loans from Defendants to pay for living expenses. All or some of these funds were paid directly to Davis. (*Id*. at ¶24). Because Davis's cost of attendance at Saint Rose was covered by federal student loan funds, the private student loans from Defendants necessarily included funds in excess of the cost of attendance, making them "mixed-use" loans and not "qualified education loans" under federal law. (*Id*. at ¶25); *see* 26 U.S.C. § 221(d)(1); 26 C.F.R. § 1.221-1(e)(4) (defining mixed-use and qualified education loans with examples).

On November 16, 2018, Davis filed for Chapter 7 bankruptcy in this Court—the United States Bankruptcy Court for the District of Nevada. (*Id*. at ¶26). The obligations to Defendants were scheduled in the bankruptcy and Defendants received notice of the bankruptcy. (*Id*. at ¶27). Further, while the "automatic stay" was in effect during the Bankruptcy, it was illegal and inaccurate for Defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent

with the Orders entered by the Bankruptcy Court, including the initial Petition for Relief for Bankruptcy protection (the "Petition"). (*Id*. at ¶28).

Defendants did not file any proceedings to declare their alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq*. (*Id*. at ¶29). Defendants also did not request relief from the "automatic stay" codified at 11 U.S.C. § 362 *et seq*., which prohibits creditors included in a consumer's bankruptcy from engaging in collection activities, while Davis's Bankruptcy was pending to pursue her on any personal liability for any of the underlying debts. (*Id*. at ¶30). On or about February 26, 2019, Davis received a bankruptcy discharge under 11 U.S.C. § 727 and just like most of Davis's consumer debts, her private student loans were discharged in her bankruptcy proceeding. (*Id*. at ¶¶31-32).

Since Davis's bankruptcy, Defendants continued to report the private student loan debt on her credit report in "current" status with a current balance that is still due and owing. (*Id*. at ¶33). The representations that the debt on the loans is due and owing are false and misleading as Davis does not owe a debt to Defendants. (*Id*. at ¶34). As a result of Defendants' unlawful credit reporting, Davis has experienced emotional distress resulting from the stress, anxiety, fear, anger, and frustration she continues to experience arising out of the actions complained of herein. (*Id*. at ¶36).

Defendants' actions are not limited to their treatment of Davis. As a matter of policy and practice, Defendants consistently fail to engage in any efforts to ensure the debts they attempt to collect are not subject to a bankruptcy discharge. (*Id*. at ¶37). Defendants' actions in failing to identify and eliminate discharged debts constitute their standard procedure for conducting their debt collection activities. (*Id*. at ¶38).

Davis brought this action individually and on behalf of classes of similarly situated individuals nationwide and in Nevada. Davis's and Class Members' discharge orders fully and completely discharge all statutorily dischargeable debts incurred prior to the filing of bankruptcies, except for those that have been: (1) reaffirmed by the debtor in a reaffirmation agreement; or (2) successfully

challenged as non-dischargeable by one of the creditors in a related adversary proceeding. Davis and the Class Members are persons for whom the debts at issue have been discharged through bankruptcy by bankruptcy courts, including this one. (*Id.* at ¶108).

Davis initially filed her complaint in district court. After filing the First Amended Complaint, Defendants moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The District Court denied Defendants' motions to dismiss without prejudice and referred the case to this Court, which reopened the bankruptcy case. Davis filed the First Amended Complaint ("FAC") with this Court on July 17, 2023. (FAC, ECF No. 1). AES moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure.

### III. ARGUMENT

**A. Legal Standard**

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b), a complaint must "contain[] enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009). Courts apply a two-step approach when considering motions to dismiss. *Amistad Christiana Church v. Life is Beautiful, LLC*, 132 F. Supp.3d 1246, 1250 (D. Nev. 2015) (citing *Iqbal*, 556 U.S. at 679). First, the court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences therefrom in the plaintiff's favor. *Id.* "Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief." *Id.* (citing *Iqbal*, 556 U.S. at 679). "A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct." *Id.* at 1250–51 (citing *Iqbal*, 556 U.S. at 663). "Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the district court to draw on its judicial experience and common sense." *Id.* at 1251 (cleaned up).

### B. Davis Does Not Allege a "Private Right of Action" Under 11 U.S.C. §524; Rather, Davis Seeks Declaratory Relief and Enforcement of the Discharge Order Through This Court's Contempt Power

AES argues that Davis's claim alleging violation of the bankruptcy discharge injunction and seeking enforcement of that injunction through this Court's contempt powers is in fact a "private right of action" under § 524 that is foreclosed by *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002). AES's characterization of Davis's claim is wrong. In the FAC, Davis alleges Defendants violated this Court's discharge injunction order and requests this Court (1) issue "a declaration that Defendants violated 11 U.S.C. § 524(i)" and (2) enforce its discharge order through issuance of the remedies of sanctions, compensatory damages, attorneys fees, and other relief, invoking "the Court's inherent powers and its statutory 11 U.S.C. § 105(a) powers for Defendants' gross violations of the discharge injunction and orders of the bankruptcy courts." (*See* FAC, ECF No. 1, ¶ 166). First, "Rule 7001(6) provides for an adversary proceeding 'to determine the dischargeability of a debt'." *In re Teran*, 649 B.R. at 803. Second, contempt is the same remedy the Ninth Circuit has repeatedly held is still available for bankruptcy discharge injunction violations. Adopting AES's misreading of *Walls* and its progeny to hold this Court is barred from issuing such relief would infringe upon this Court's well-established authority to enforce its own orders.

In *Walls*, the plaintiff had her debts discharged in bankruptcy, although the defendant continued to collect on certain debts both after the automatic stay and after discharge. 276 F.3d 502, 505 (9th Cir. 2002). The plaintiff filed a class action complaint in district court, bringing *inter alia* "claims for willful violation of the automatic stay, and for contempt on account of the alleged violation of the automatic stay and the discharge injunction," as well as willful violation of 11 U.S.C. § 524(a)(2). *Id.* The district court dismissed the claim based on § 524 but referred the claim for contempt of court for violation of the discharge injunction and the claim for willful violation of the automatic stay to the bankruptcy court. *Id.* On appeal, the Ninth Circuit affirmed the dismissal, holding "there is no private right of action under § 524." *Id.* at 509.

6

Significantly, the Ninth Circuit reasoned it would not imply a private right of action into § 524 itself because there is already a remedy available for violations of discharge injunctions under § 524: "the contempt remedies available under § 105(a)" to bankruptcy courts. *Id.* at 509; *see id.* at 507 ("[C]ivil contempt is the normal sanction for violation of the discharge injunction." (quoting 4 *Collier on* Bankruptcy ¶524.02[2][c] (15th ed. 1999)). According to the *Walls* court, "compensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction. Therefore, contempt is the appropriate remedy and no further remedy is necessary." *Id.* at 507.

AES argues Davis has brought a private right of action under § 524 that is barred by *Walls*. To the contrary, Davis has adequately alleged a "cause of action for contempt" in the bankruptcy court as contemplated by *Walls*. *Id.* at 506. In the FAC, she has alleged "gross violations" of this Court's discharge order and "seek[s] an award of sanctions," as well as "all appropriate damages, including but not limited to actual damages, and attorneys' fees and costs . . . ." (ECF No. 1, ¶166). In seeking these sanctions and other relief, Davis specifically invokes "the Court's inherent powers and its statutory 11 U.S.C. § 105(a) powers"—that is, the power of civil contempt of court. (*Id.*).

Davis may also seek declaratory relief in an adversary proceeding under Rule of Federal Bankruptcy Procedure 7001(6). *In re Teran*, 649 B.R. 794, 803 (Bankr. N.D. Cal. 2023) (granting declaratory relief in adversary proceeding); *In re Nash*, 464 B.R. 874, 879 (B.A.P. 9th Cir. 2012) (affirming bankruptcy court decision including declaratory relief on whether defendants violated discharge injunction under § 524(a)(2) because "[a]n adversary proceeding targeting this type of relief is proper under Rule 7001(6) and (9)").

Because declaratory relief remains available under Rule 7001(6) and because a claim for contempt in the bankruptcy court for violation of discharge injunctions is specifically recognized in *Walls*, *Walls* presents no obstacle to this Court's use of its contempt powers to issue Davis's requested relief for Defendants' ongoing violations of this Court's discharge order. *See In re Lopez*, 345 F.3d

701, 706 (9th Cir. 2003) (holding (1) bankruptcy court did not abuse its discretion by construing Section 524 claim as one for declaratory relief "to obtain substantial jutice" under Rule 8(f) of the Federal Rules of Civil Procedure after *Walls* and (2) the debtor plaintiffs "had standing to seek relief from the bankruptcy court thorugh a contempt proceeding" (citing *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002)).

**C.  Davis's claim for contempt can be construed as a motion for contempt.**

AES next argues under *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186 (9th Cir. 2011), that Davis's claim for contempt must be dismissed because it was brought by a complaint and not a motion for contempt. *Barrientos* is in conflict with *Walls* on this point, as the plaintiff in *Walls* filed a cause of action for contempt in a complaint which was subsequently referred to the bankruptcy court, in the same procedure Davis has employed here. In *In re Teran*, the bankruptcy court noted that in *Taggart v. Lorenzen*, ___ U.S. ___, 139 S. Ct. 1795 (2019), decided well after *Walls* and *Barrientos*, the United States Supreme Court "very specifically identified Section 105 and 524 as the provisions that permit a court to hold a creditor in civil contempt. There is no reference to a motion for contempt. under Rule 9020 in the opinion." *In re Teran*, 649 B.R. at 803, n.3. Although the court in *Teran* declined "to glean that somehow the Supreme Court overruled *Walls* and *Barrientos*, sub silentio," the requirement in *Barrientos* that a claim for contempt be brough by way of motion is inconsistent with *Taggart* locating that power purely in the statutes of the Bankruptcy Code. It follows that *Barrientos* is inconsistent with *Taggart* and is no longer good law. Indeed, "*Barrientos* is unclear, . . . as to the proper procedure where, in addition to contempt damages, a debtor seeks other or additional relief of the sort that usually requires an adversary proceeding." *In re Nash*, 56 B.R. at 879 (declining to remand to determine whether contempt hearing is warranted when contempt heard in adversary proceeding because "it would not serve the interests of justice"). Because it erects a formalistic barrier to this court's power, is incompatible with *Taggart*, and is even inconsistent with *Walls* itself, this Court should conclude *Barrientos* has been overruled.

Assuming *Barrientos* remains binding precedent, however, Davis respectfully requests this Court treat Davis's cause of action for contempt as a motion for contempt. *See In re Lopez*, 345 F.3d at 706 ("The bankruptcy court did not abuse its discretion in construing the pleadings to obtain substantial justice." (citing Fed. R. Civ. Pro. 8(f))); *In re Motichko*, 395 B.R. 25, 33 (Bankr. N.D. Ohio 2008) (treating claim for contempt in complaint filed in adversary proceeding as motion for contempt because "[t]o dismiss on procedural grounds alone would be to elevate form over substance," and "[g]iven that this Court has the discretion to require the more structured discovery process of an adversary proceeding in a contested matter, the Court sees no reason to require Debtors to dismiss this adversary proceeding and refile it as a contested motion. Such unnecessary 'hoop jumping' would merely serve to increase the costs of litigation, without providing any real benefit to either party.").

Davis has effectively sought a motion for contempt in her FAC. "The Ninth Circuit has 'adopted a two-party test for determining the propriety of a contempt sanction in the context of a discharge injunction [violation]: '[T]o justify sanctions, the movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction.' " *In re Pohlman*, 2018 WL 3854137, at *5 (quoting *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002) (alterations in original). The allegations in the FAC, if proven, satisfy both of these elements. (*See, e.g.,* ECF No. 1 at ¶¶107–33, 164, & 166).

Alternatively, Davis is prepared to file a motion for contempt in this reopened bankruptcy case. Should this Court determine that Davis must request relief for alleged violations of the discharge injunction in a motion for contempt and that it cannot treat the claim in the FAC as such a motion, it should permit the filing of a motion for contempt in the bankruptcy case while denying Defendants' motions to dismiss with respect to Davis's claims. In doing so this Court may "consider the consolidation of these proceedings for trial pursuant to Fed. R. Civ. P. 42, made applicable to adversary proceedings by Fed. R. Bankr. P. 7042 and contested matters by Fed. R. Bankr. P. 9014(c)." *In re Moore*, 521 B.R. 280, 292 (Bankr. E.D. Tenn. 2014); *see In re Teran*, 649 B.R. at 803 ("[T]he court

is authorized to consolidate a Rule 9020 sanctions motion, the class action process to deal with multiple contempts and adversary proceedings to determine dischargeability.").

### D. Davis's remaining claims are not "functionally equivalent" to a private right of action under § 524.

AES next stretches *Walls* to contend that Davis's other claims are "simultaneous" or "functionally equivalent' to assertion of a § 524 private right of action. This overstates *Walls'* second holding. While the *Walls* court did hold that a claim under the Fair Debt Collection Practices Act (FDCPA) was "based on an alleged violation of § 524," 276 F.3d at 510–11, that reasoning does not extend to Davis's other claims here.

First, Davis's FCRA claim is not "functionally equivalent" to an alleged violation of § 524. Unlike the FDCPA which was at issue in *Walls* prohibiting debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect an debt," the FCRA is not duplicative of § 524 and does not entail "bankruptcy-laden determinations." *Walls*, 276 F.3d at 510–11. Under the FCRA, it is the reporting of inaccurate information either willfully or negligently that is the prohibited conduct. *See* 15 U.S.C. §§ 1681n, 1681o. While a creditor or servicer like AES might use reports to credit rating agencies in an attempt to collect debt, that is not the conduct prohibited by the FCRA, and proof of willfully or negligently reporting inaccurate information is enough. Accordingly, § 524 and the FCRA are not "competing" but complementary, because they prohibit different acts. As they are not competing, it is not necessary to harmonize congressional intent and determine if Congress intended to partially repeal the FCRA in enacting § 524 and the Bankruptcy Code. Moreover, none of the cases Defendants cite applies *Walls* to an FCRA claim—for good reason. Such a holding would effectively immunize furnishers of credit information from suit under the FCRA if the debtor obtains discharge of debt in bankruptcy and the furnisher persists in wrongly reporting the debt. That is precisely the conduct Congress intended the FCRA to prevent. There is no evidence Congress intended to so limit the FCRA in enacting § 524.

Second, Davis's unjust enrichment claim under Nevada law is not based on an alleged violation of § 524. While the Court in *Walls* was required to "read two competing statutes jointly" and harmonize congressional intent, that analysis is inapplicable to state-law claims, which cannot be implicitly repealed as the *Walls* court held the FDCPA was in part, but must be preempted.

"Congress did not place preemptive language in the Bankruptcy Code, nor did Congress intend that the Bankruptcy Code be so pervasive that it occupy the field of debtor/creditor relations. Therefore, in order for this court to conclude that the Bankruptcy Code preempts the [state] law, the court must conclude that an actual conflict exists between a specific provision of the Bankruptcy Code and [the state law]." *In re P.K.R. Convalescent Centers, Inc.*, 189 B.R. 90, 93 (Bankr. E.D. Va. 1995). *Walls* provides no support for the position that there is a *conflict* between § 524 and common-law unjust enrichment justifying implied preemption.

Third, for the same reason, *Walls* does not mandate dismissal of Davis's claim under the NDTPA. *Walls* spoke only to the requirement to harmonize the intent of Congress in enacting competing statutes; that requirement does not extend to harmonizing congressional intent with that of state legislatures. Once again, *Walls* does not address preemption of state law, but the implicit repeal of a potentially conflicting federal statute. Furthermore, there is no conflict between the NDTPA and § 524. Accordingly, the NDTPA was not preempted by § 524.

Finally, there is a circuit split as to whether the Bankruptcy Code conflicts with any other federal statute, including the FDCPA. *See In re Marshall*, 491 B.R. 217, 225 (S.D. Ohio 2012) (collecting cases and declining to follow *Walls* because "the lack of a private cause of action under the Bankruptcy Code for actions violating the discharge injunction does not necessarily mean that other remedies under applicable non-bankruptcy law are therefore unavailable to debtors for violations of the discharge injunction."). Extending *Walls* beyond its holding by concluding Congress implicitly repealed the FCRA or preempted state-law claims would deepen this split into a chasm.

*Walls* requires none of Davis's other claims to be dismissed because, unlike the FDCPA claim at issue in *Walls*, they are not functionally equivalent to a § 524 claim, and two are based on state, not federal law, and so cannot be repealed by Congress. The FCRA is not "functionally equivalent" to a § 524 claim. Furthermore, there is no express or field preemption of state law under the Bankruptcy Code and Defendants have not shown that there is an actual conflict between § 524 and state-law claims for unjust enrichment or the NDTPA such that those claims were implicitly preempted.

**E. The FCRA claim here does not fail as a matter of law, as it does not involve an unsettled legal question.**

AES next argues Davis's FCRA claim must be dismissed because it involves an "unsettled legal question." AES relies on *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 266 (2d. Cir. 2023), in which the Second Circuit affirmed summary judgment on a FCRA claim in which the plaintiff alleged the loan provider wrongly reported loan debt to the credit rating agencies that the plaintiff contended was discharged in bankruptcy because "the legal inaccuracy alleged . . . is not cognizable under the FCRA." *Id.* Although both *Mader* and this case involve loans the defendants contend were not discharged for educational purposes, the exception to bankruptcy discharge the plaintiff in *Mader* relied upon demanded the result there because it required legal analysis of an ambiguous clause: "made under any program funded in whole or in part by" the government or a nonprofit. *See* 11 U.S.C. § 523(a)(8)(A)(i). The Second Circuit reasoned that acknowledging the cognizability of a claim under this subsection would require interpreting the term "program" narrowly enough to avoid bringing all education loans within its ambit, and that courts had disagreed about the level of specificity required when identifying a qualifying "program" under the § 523(a)(8)(A)(i) exception. *Id.* at 268–69.

Here, in contrast, where there is no "program" relying on government or nonprofit aid and the loan is purely private, the question is simply whether the loan is a "qualified education loan" under 11 U.S.C. § 523(a)(8)(B), which only involves a question of whether the loan covered the "cost of attendance" under 26 U.S.C. § 221(d)(2) and 20 U.S.C. § 1087ll (1986). These statutes clearly define

the costs included in the term such as "tuition and fees" and "room and board," which are "objectively and readily verifiable," and do not carry the ambiguity inherent in construing the term "program." Davis's payment history is not relevant to this question, particularly given Defendants' conduct in coercing Davis to make payments on the discharged debt.

Accordingly, the inaccuracy alleged here does not involve the sort of "unsettled" legal question rejected in *Mader*.[1] In *In re Teran*, a bankruptcy court in this circuit distinguished *Mader* and denied summary judgment on a claim that a creditor continued reporting on allegedly discharged student loan debt under the California Consumer Credit Reporting Agencies Act (a state-law analogue to the FCRA) in part by distinguishing *Mader*. 638 B.R. 620, 625–26 (Bankr. N.D. Cal. 2022). The *Teran* court held that *Mader* was not relevant to the question of whether the loans at issue were non-dischargeable "qualified education loans" because in *Mader* "there was no dispute that the program that originated the plaintiff's private loans also made Stafford loans." *Id*. It then held the loan was not a nondischargeable "qualified education loan" as a matter of law—the same provision Davis advances here. *See id.* at 627. Because whether Davis's private student loan was a "qualified education loan" that covered the cost of attendance is objectively and readily verifiable, and because Davis already had federal student loans going toward the cost of attendance and the private student loans in question exceeded the cost of attendance, AES's motion to dismiss Davis's FCRA claim should be denied.

### F. The Voluntary Payment Doctrine Does Not Bar Davis's Unjust Enrichment Claim

AES next argues the voluntary payment doctrine bars Davis's unjust enrichment claim.[2] The doctrine does not bar Davis's claim because several exceptions apply. Under Nevada law, "[t]he voluntary payment doctrine is an affirmative defense that 'provides that one who makes a payment

---

[1] Alternatively, *Mader* is not binding on this Court and is wrongly decided Other courts have not "followed *Mader*'s lead" as AES argues. The court in the lone case with which AES supports this proposition merely cited *Mader* for the rule that "inaccuracies that turn on legal disputes are not cognizable under the FCRA"—not *Mader*'s application of that rule to any part of § 523. *See Hyde v. Trans Union, LLC*, No. 2:21-CV-230, 2023 WL 2816029, at *4 (quoting *Mader*, 56 F.4th at 270).

[2] AES does not assert the voluntary payment doctrine against the NDTPA claim.

13

voluntarily cannot recover it on the ground that he was under no legal obligation to make the payment.'" *Nevada Ass'n Servs., Inc. v. Eighth Jud. Dist. Ct.*, 338 P.3d 1250, 1254 (Nev. 2014) (quoting *Best Buy Stores v. Benderson-Wainberg Assocs.*, 668 F.3d 1019, 1030 (8th Cir. 2012)).

> Because the voluntary payment doctrine is an affirmative defense, the defendant bears the burden of proving its applicability. Once a defendant shows that a voluntary payment was made, the burden shifts to the plaintiff to demonstrate that an exception to the voluntary payment doctrine applies. If an exception applies, a plaintiff is not precluded from recovering a payment that it made without protest.

*Id.* at 1254 (cleaned up). Here, two exceptions to the doctrine apply: (1) coercion or duress caused by a business necessity, and (2) payment induced by fraud or improper conduct on the part of the payee.

First, "[t]he coercion or duress exception applies when (1) one side involuntarily accepted the terms of another; (2) circumstances permitted no other alternative; and (3) circumstances were the result of coercive acts of the opposite party. Business necessity can constitute duress for the purposes of this exception. Business necessity constituting duress occurs when the payor has only a single commercially reasonable course of action, despite the fact that the action involves a choice, in some limited sense." *Id.* at 1255 (cleaned up). Here, Davis was unwillingly forced to accept Defendants' representations to her and the CRAs that her debt was still due and owing; having recently escaped bankrupty and needing to avoid further tarnishment of her credit ratings, she had no alternative than paying. This was due to Defendants' coercion, as Defendants' represented the debt to Davis and the CRAs as due and owing and would doubtless have taken further action to collect if she refused to pay. (*See* ECF No. 1, ¶ 35 ("Due to Defendant's continued reporting of the private student loan debt as due and owing, Plaintiff has continued to make payments on the discharged debt in an effort to remove the negative reporting from her credit report"); *see also id.* at ¶121–25).

Second, improper conduct on the part of the payee provides an exception to the doctrine. *Time Warner Entm't Co. v. Whiteman*, 802 N.E.2d 886, 889 (Ind. 2004) (recognizing exception for payment "induced by any fraud or improper conduct on the part of the payee"). "This exception applies, . . .

14

where the improper conduct induces the payee's mistake of law." *Id.* Here, by continuing to treat the debt on the Loans as due and owing and by reporting it as such to the CRAs, AES induced Davis into the mistake of law that her Loans were not discharged in bankruptcy.

Because Davis made the payments under coercion or duress, and any payments were induced by fraud or improper conduct on the part of Defendants, the voluntary payment doctrine does not apply to bar Davis's claim for unjust enrichment.

### G. Davis Pled Her NDTPA Claim against AES with Particularity.

AES next argues Davis failed to plead her NDTPA claim with particularity as required by Rule 9(b). In the FAC, Davis alleged AES made the following false and misleading representations:

- AES "ha[s] continued to report the private student loan debt on her credit report in 'current' status with a current balance that is still due and owing," "representations that . . . are false and misleading," (FAC, ECF No. 1, ¶¶33–34);
- AES "fail[s] to identify and eliminate discharged debts" from those it attempts to collect, (*id.* at ¶38);
- AES "ha[s] a deliberate policy of not notifying credit reporting agencies that debts formerly owing to Defendants are no longer 'Open,' 'charged off,' or currently still due and owing because they have been discharged in bankruptcy," after reporting debts as due and owing pre-bankruptcy (*id.* at ¶¶111–13);
- AES "refused to" "remove the 'current,' 'open,' 'charged off,' and 'past due' statuses" from consumers credit reports even after being asked to do so, and indeed "often verify their reporting as accurate to the CRA[]s . . . ," (*id.* at ¶117);
- "[E]ven in response to notices made . . . from Class Members that information contained in their credit reports was inaccurate, [AES] ha[s] refused to correct erroneous credit information despite [its] affirmative duty to do so," (*id.* at ¶118);
- AES "has responded that [] debts were still due and owing" when asked by the CRAs, (*id.* at ¶119);
- AES "reported that the status of the debts were 'current' and reflecting owed balances, i.e., still legally collectable, as opposed to 'Discharged in Bankruptcy,'" (*id.* at ¶140).

These allegations are incorporated by reference into Davis's NDTPA claim. (*See id.* at ¶167). Thus, Davis has alleged violation of the NDTPA with particularity. However, there is no general requirement that a NDTPA claim be pled with particularity under Rule 9. The Nevada Supreme Court

15

has not ruled on whether the heightened pleading standard of Rule 9 applies to claims brought under NRS 598. The court has, however, ruled on the almost identical issue of whether a heightened burden of proof applies to deceptive trade practices claims:

> [W]hile some deceptive trade practices defined in NRS Chapter 598 sound in fraud, *see*, *e.g.*, NRS 598.0923(2), which, under common law, must be proven by clear and convincing evidence, we cannot conclude that deceptive trade practices claims are subject to a higher burden of proof absent a legislative directive.

*Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 435 (Nev. 2010) (citation omitted). Put differently, a claim is not considered "fraud" just because it is brought under the deceptive trade practices act. *Poole v. Nev. Auto Dealership Invs., LLC*, 2019 Nev. App. LEXIS 4, *13 (Nev. App. Sep. 5, 2019) ("Interpreting 'knowingly' to require more than general intent would render NDTPA and common law fraud claims redundant").

Therefore, in answering whether a heightened *pleading* standard applies, the answer is the same: there is no special requirement simply because the claim is brought under NRS 598. Nevada courts to consider this issue have therefore held that Rule 9 does not apply to NRS 598. *E.g.*, *Alula v. Homegoods, Inc.*, No. A-20-814627-C (8th Jud. Dist. Ct. Oct 9, 2020) (finding *Betsinger* is instructive and holding that "[t]his Court therefore will not place a heightened pleading standard on Plaintiff's NRS 598 claims when the Nevada Supreme Court declined the opportunity to do so").[3] Accordingly, even if the heightened pleading standard applies, Plaintiff has met her burden to allege the NDTPA claim.

**H.  The NDTPA applies to this transaction.**

Finally, AES argues the NDTPA "only applies to transactions involving the sale or lease of good[s] and services," and lending and loan servicing is not a good or service. This argument fails because, even assuming consumer lending is not a "service," the NDTPA "catch-all provision" extends beyond the sale of or lease of goods or services.

---

[3] Plaintiffs do not take the position that Rule 9 can *never* apply to a NRS 598 claim. Instead, "[c]laims are only subject to these heightened pleading standards if they 'sound in fraud.'" *E.g.*, *In re Equifax, Inc.*, 362 F. Supp. 3d 1295, 1335 (N.D. Ga. 2019).

16

Nev. Rev. Stat. § 41.600(2)(e) provides that "any person who is a victim of consumer fraud may bring a cause of action against the alleged perpetrator." "Consumer fraud includes '[a] deceptive trade practice' as defined by the NDTPA." *R.J. Reynolds Tobacco Co. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 138 Nev. Adv. Op. 55, 514 P.3d 425, 429 (2022) (quoting NRS 41.600(2)(e)). Under the NDTPA, "Deceptive trade practices" are defined broadly through a catch-all provision which prohibits a person "in the course of his or her business or occupation" from "[k]nowingly mak[ing] any other false representation in a transaction." Nev. Rev. Stat. § 598.0915(15).

Nevada courts have not conclusively held whether conduct by lenders to consumers is covered by the NDTPA. However, while other "deceptive trade practices" prohibited under § 598.0915 "apply specifically to the sale or lease of goods or to retail installment transactions," the Supreme Court of Nevada has held that "NRS 598.0915(15) could apply to [other] transactions." *Davenport v. GMAC Mortg.*, 129 Nev. 1109, 2013 WL 5437119, at *2 (unpublished disposition). Accordingly, one need only be engaged "in the course of his or her business or occupation" when "making a false representation in a transaction" for one's act to come within the ambit of this provision. That "transaction" is not limited to one for sale or lease of goods or services. In *Davenport*, the transaction was for the sale of real estate. *Id.* Here, the transactions into which AES entered were its wrongful attempts to collect on the Loan. Furthermore, contrary to AES's assertion that courts have regularly held that loans and loan servicing do not fall within the NDTPA, in *Urbina v. Homeview Lending, Inc.*, a Nevada district court held a plaintiff stated a claim against a loan servicer. *See* 681 F.Supp.2d 1254, 1261 (D. Nev. Aug. 13, 2009). Accordingly, to the extent there is guidance on the scope of the NDTPA, this Court should be persuaded by *Davenport*, in which the Supreme Court of Nevada directly addressed the catchall provision in NRS 598.0915(15) and affirmed its applicability to debt collection.

Finally, while attempts to collect a debt are not "doing business" under NRS 80.015(1)(h), the NDTPA covers all transactions and AES's actions extend beyond attempting to collect a debt, such as

17

by taking legal action. Davis owed Key and AES no debt, and the obtainment of payments from Davis for debt not due was wrongful because they were procured by making false representations regarding Davis's legal rights and obligations regarding the discharged debts. For these reasons, the NDTPA applies and this Court should not dismiss Davis's NDTPA claim.

## IV. CONCLUSION

WHEREFORE, Davis respectfully requests the Court deny AES's Motion to Dismiss in its entirety. If the Court concludes *Barrientos* requires the filing of a motion for contempt, it should treat plaintiffs' contempt claim as such or permit the filing of a motion for contempt, deny the motion to dismiss plaintiffs' claims, and consolidate the matters for trial pursuant to Rule 42 and Bankruptcy Rules 7042 and 9014(c).

Dated: November 24, 2023

FREEDOM LAW FIRM

 /s/ George Haines
George Haines, Esq.
Gerardo Avalos, Esq.
8985 S. Eastern Ave., Suite 100
Las Vegas, Nevada 89123

*Attorneys for Plaintiff*

MILBERG COLEMAN BRYSON PHILLIPS PLLC

/s/Scott C. Harris (Admitted Pro Hac Vice)
Scott C. Harris, Esq.
sharris@milberg.com
900 W. Morgan Street
Raleigh, NC 27603
(919) 600-5003