1
2
3
4
5

George Haines, Esq.
Nevada Bar No. 9411
FREEDOM LAW FIRM
8985 S. Eastern Ave., Suite 100
Las Vegas, NV 89123
Telephone: (702) 880-5554
Facsimile: (702) 385-5518
georgehaines@freedomlegalteam.com
*Attorneys for Plaintiff*

6
7

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

8
9
10
11

IN RE:

AMANDA RAE DAVIS,

               Debtor(s)

Case No. BK-S-18-16836-hlb
Chapter 7

12
13
14
15
16
17
18
19
20
21

AMANDA DAVIS, individually and on behalf
of all others similarly situated;

               Plaintiff,

      v.

KEYBANK N.A.; and KEYBANK TRUST
d/b/a AMERICAN EDUCATION SERVICES
LLC d/b/a KEYCORP STUDENT LOAN
TRUST,

               Defendants.

Adversary Proceeding: 23-01110-hlb

**PLAINTIFF'S OPPOSITION TO
DEFENDANT KEYBANK N.A.'S
MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT**

**Hearing Date: December 7, 2023**
**Hearing Time: 10:00 AM**

22
23
24
25
26

      Plaintiff Amanda Davis ("Plaintiff" or "Davis"), individually and on behalf of all others

similarly situated, submits this response in Opposition to Defendant KeyBank N.A.'s ("Key") Motion

to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure

and Rule 7012 of the Federal Rules of Bankruptcy Procedure.

27

## I. INTRODUCTION

28

      Davis has filed this class action to obtain a declaration of her rights as specified in the discharge

order. Additionally, she is invoking the contempt power of this Court due to a violation of that order. Davis is also asserting that AES has infringed upon her rights under the Fair Credit Reporting Act ("FCRA") and has also violated the Nevada Deceptive Trade Practices Act ("NDTPA"). Finally, Davis is seeking remedies for unjust enrichment under Nevada common law.

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.' " *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991)). The bankruptcy order discharging all dischargeable debts issued in each case, which is an automatic injunction under 11 U.S.C. § 524(a), "thus advances the overarching purpose of the Bankruptcy Code. For that reason, the scope of the injunction is broad, and bankruptcy courts may enforce it through 11 U.S.C. § 105, any sanctions imposed for violations being in the nature of civil contempt." *In re Canning*, 706 F.3d 64, 69 (1st Cir. 2013) (cleaned up). Davis brings this case to "vindicate[] h[er] rights and those of thousands of people like h[er]" who have been denied the "fresh start' bankruptcy promises to those whose private student loans are not "qualified education loans" under the Bankruptcy Code. *In re Teran*, 649 B.R. 794, 799 (Bankr. N.D. Cal. 2023).

Key, the originator of Davis's loan, argues that the Ninth Circuit's refusal to recognize a "private right of action" under § 524 also limits this Court's ability to use its equitable and contempt powers to provide relief when a plaintiff invokes them and alleges systematic violation of bankruptcy discharge orders, as Davis does here. Key next argues that Davis's other claims, including a claim under the Fair Credit Reporting Act and standalone state-law claims, must be dismissed because they are "functionally equivalent" to a § 524 claim, although no court has held so. Key also argues Davis cannot seek contempt in her bankruptcy case because this has been labeled an adversary proceeding. Key makes further arguments based on judicial estoppel, assertions that factual allegations are inadequate despite the plain language of the bankruptcy discharge order and governing statutes, and attacks on the legal sufficiency of two of Davis's other claims. Key attempts to circumvent this Court's bankruptcy discharge order by stretching the reasoning of caselaw, ignoring the plain language of the

bankruptcy discharge order and relevant federal statutes, and ignoring Davis's plausible allegations. This effort by Key to evade responsibility for its repeated violations of this Court's bankruptcy discharge injunction and independent obligations under federal and state law should be rejected and Key's motion to dismiss denied.

First, Davis does not assert a prohibited "private right of action" based on § 524, but rather seeks declaratory relief as well as enforcement of the bankruptcy discharge injunction itself through the means recognized in *Walls*: invocation of this Court's contempt powers. Second, just as the contempt claim is not a private right of action under § 524, Davis's standalone claims under the Fair Credit Reporting Act, for unjust enrichment, and under the Nevada Deceptive Trade Practices Act are not "functionally equivalent" to a prohibited § 524 claim. Third, Davis's contempt claim can be treated as a motion for contempt. Fourth, Key had no objectively reasonable basis for believing the Loans were not discharged. Fifth, Plaintiff's claims are not barred by judicial estoppel. Sixth, the FAC plausibly alleges that the Loans were discharged. Seventh, Plaintiff's FCRA claim does not fail as a matter of law because there is no unsettled legal question. Finally, the NDTPA does apply to the conduct alleged. For these reasons, Key's motion to dismiss Davis's FAC should be denied.

## II. RELEVANT FACTS

Amanda Davis enrolled at College of Saint Rose in 2005 for a Teacher Education Baccalaureate program. (ECF No. 1, ¶22). Davis paid for her cost of attendance with federal student loan funds. (*Id*. at ¶23). She also borrowed approximately $10,752.68 in private student loans from Defendants to pay for living expenses. All or some of these funds were paid directly to Davis. (*Id*. at ¶24). Because Davis's cost of attendance at Saint Rose was covered by federal student loan funds, the private student loans from Defendants necessarily included funds in excess of the cost of attendance, making them "mixed-use" loans and not "qualified education loans" under federal law. (*Id*. at ¶25); *see* 26 U.S.C. § 221(d)(1); 26 C.F.R. § 1.221-1(e)(4) (defining mixed-use and qualified education loans with examples).

3

On November 16, 2018, Davis filed for Chapter 7 bankruptcy in this Court—the United States Bankruptcy Court for the District of Nevada. (*Id*. at ¶26). The obligations to Defendants were scheduled in the bankruptcy and Defendants received notice of the bankruptcy. (*Id*. at ¶27). Further, while the "automatic stay" was in effect during the Bankruptcy, it was illegal and inaccurate for Defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court, including the initial Petition for Relief for Bankruptcy protection. (*Id*. at ¶28).

Defendants did not file any proceedings to declare their alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq*. (*Id*. at ¶29). Defendants also did not request relief from the "automatic stay" codified at 11 U.S.C. § 362 *et seq*., which prohibits creditors included in a consumer's bankruptcy from engaging in collection activities, while Davis's Bankruptcy was pending to pursue her on any personal liability for any of the underlying debts. (*Id*. at ¶30). On or about February 26, 2019, Davis received a bankruptcy discharge under 11 U.S.C. § 727 and just like most of Davis's consumer debts, her private student loans were discharged in her bankruptcy proceeding. (*Id*. at ¶¶31-32).

Since Davis's bankruptcy discharge, Defendants have continued to report the private student loan debt on her credit report in "current" status with a current balance that is still due and owing. (*Id*. at ¶33). The representations that the loan debt is due and owing are false and misleading as Davis does not owe a debt to Defendants. (*Id*. at ¶34). As a result of Defendants' unlawful credit reporting, Davis has experienced emotional distress resulting from the stress, anxiety, fear, anger, and frustration she continues to experience arising out of the actions complained of herein. (*Id*. at ¶36).

Defendants' actions are not limited to their treatment of Davis. As a matter of policy and practice, Defendants consistently fail to engage in any efforts to ensure the debts they attempt to collect are not subject to a bankruptcy discharge. (*Id*. at ¶37). Defendants' actions in failing to identify and

4

eliminate discharged debts constitute their standard procedure for conducting their debt collection activities. (*Id*. at ¶38).

Davis initially filed her class action complaint in district court. After filing the First Amended Complaint, Defendants moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The District Court denied Defendants' motions to dismiss without prejudice and referred the case to this Court, which reopened the bankruptcy case. Davis filed the First Amended Complaint with this Court on July 17, 2023. (FAC, ECF No. 1). Key moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure.

## III. ARGUMENT

### A.  Legal Standard

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain[] enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009). Courts apply a two-step approach when considering motions to dismiss. *Amistad Christiana Church v. Life is Beautiful, LLC*, 132 F. Supp.3d 1246, 1250 (D. Nev. 2015) (citing *Iqbal*, 556 U.S. at 679). First, the court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences therefrom in the plaintiff's favor. *Id.* "Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief." *Id.* "A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct." *Id.* at 1250–51. "Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the district court to draw on its judicial experience and common sense." *Id.* at 1251 (cleaned up).

### B.  Davis Does Not Allege a "Private Right of Action" Under 11 U.S.C. § 524; Rather, Davis Seeks Declaratory Relief and Enforcement of the Discharge Order Through This Court's Contempt

Key argues that Davis's claim alleging violation of the bankruptcy discharge injunction order and seeking enforcement through this Court's contempt powers was in fact a "private right of action" under § 524 that is foreclosed by *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002). Key's characterization of Davis's claim is wrong. In the FAC, Davis alleges Defendants violated this Court's discharge injunction order and requests this Court (1) issue "a declaration that Defendants violated 11 U.S.C. § 524(i)" and (2) enforce its discharge order through issuance of the remedies of sanctions, compensatory damages, attorneys fees, and other relief, invoking "the Court's inherent powers and its statutory 11 U.S.C. § 105(a) powers for Defendants' gross violations of the discharge injunction and orders of the bankruptcy courts." (*See* FAC, ECF No. 1, ¶ 166). First, "Rule 7001(6) provides for an adversary proceeding 'to determine the dischargeability of a debt'." *In re Teran*, 649 B.R. at 803. Seocnd, contempt is the same remedy the Ninth Circuit has repeatedly held is still available for bankruptcy discharge injunction violations. Adopting Key's misreading of *Walls* and its progeny to hold this Court is barred from issuing such relief would infringe upon this Court's well-established authority to enforce its own orders.

In *Walls*, the plaintiff had her debts discharged in bankruptcy, although the defendant continued to collect on certain debts both after the automatic stay and after discharge. 276 F.3d 502, 505 (9th Cir. 2002). The plaintiff filed a class action complaint in district court, bringing *inter alia* "claims for willful violation of the automatic stay, and for contempt on account of the alleged violation of the automatic stay and the discharge injunction," as well as willful violation of 11 U.S.C. § 524(a)(2). *Id.* The district court dismissed the claim based on § 524 but referred the claim for contempt of court for violation of the discharge injunction and the claim for willful violation of the automatic stay to the bankruptcy court. *Id.* On appeal, the Ninth Circuit affirmed the district court, holding "there is no private right of action under § 524." *Id.* at 509.

Significantly, the Ninth Circuit reasoned it would not imply private right of action into § 524 itself because there is another remedy available for violations of discharge injunctions under § 524:

"the contempt remedies available under § 105(a)" to bankruptcy courts. *Id.* at 509; *see id. at* 507 ("[C]ivil contempt is the normal sanction for violation of the discharge injunction." (quoting 4 *Collier on* Bankruptcy ¶524.02[2][c] (15th ed. 1999)). According to the *Walls* court, "compensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction. Therefore, contempt is the appropriate remedy and no further remedy is necessary." *Id.* at 507.

Key argues Davis has brought a private right of action under § 524 that is barred by *Walls*. To the contrary, Davis has adequately brought a "cause of action for contempt" in the bankruptcy court as contemplated by *Walls. Id.* at 506. In the FAC, she has alleged "gross violations" of this Court's discharge order and "seek[s] an award of sanctions," as well as "all appropriate damages, including but not limited to actual damages, and attorneys' fees and costs . . ." (ECF No. 1, ¶166). In seeking these sanctions and other relief, Davis specifically invokes "the Court's inherent powers and its statutory 11 U.S.C. § 105(a) powers"—that is, the power of civil contempt of court.

Davis may also seek declaratory relief in an adversary proceeding under Rule of Federal Bankruptcy Procedure 7001(6). *In re Teran*, 649 B.R. 794, 803 (Bankr. N.D. Cal. 2023) (granting declaratory relief in adversary proceeding); *In re Nash*, 464 B.R. 874, 879 (B.A.P. 9th Cir. 2012) (affirming bankruptcy court decision including declaratory relief on whether defendants violated discharge injunction under § 524(a)(2) because "[a]n adversary proceeding targeting this type of relief is proper under Rule 7001(6) and (9)"). Key also cites *Brown v. Transworld Sys., Inc.*, 73 F.3th 1030, 1038 (9th Cir. 2023), but *Brown* merely applies the holding of *Walls*.[1] The *Brown* court recognized that "[t]he appropriate remedy is contempt of court against the offending creditor pursuant to 11 U.S.C. § 105(a)," and that 105(a) specifically allows "an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction[.]" That is the

---

[1] The other cases Key cites similarly apply *Walls* and affirm the availability of contempt under § 105(a). *See, e.g., Knopfler v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1190 (9th Cir. 2003) (citing *Walls*, 276 F.3d at 507).

relief Davis seeks from this Court pursuant to its § 105(a) powers. Moreover, unlike in this case, the plaintiff in *Brown* but did not move for referral to the bankruptcy court, which is the only court that may issue the remedy of civil contempt under *Walls*.

Because declaratory relief remains available under Rule 7001(6) and because a claim for contempt in the bankruptcy court for violation of discharge injunctions is specifically recognized in *Walls* and *Brown*, these cases present no obstacle to this Court's use of its contempt powers to issue Davis's requested relief for Defendants' ongoing violations of this Court's discharge order. *See In re Lopez*, 345 F.3d 701, 706 (9th Cir. 2003) (holding (1) bankruptcy court did not abuse its discretion by construing Section 524 claim as one for declaratory relief "to obtain substantial justice" under Rule 8(f) of the Federal Rules of Civil Procedure after *Walls* and (2) the debtor plaintiffs "had standing to seek relief from the bankruptcy court thorugh a contempt proceeding" (citing *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002)).

### C. Plaintiff's remaining claims are not "functionally equivalent" to a private right of action under § 524.

Key further stretches *Walls* to contend that all of plaintiff's other claims are "simultaneous" or "functionally equivalent' to Plaintiff's § 524 claim. This overstates *Walls'* second holding. While the *Walls* court did hold that a claim under the Fair Debt Collection Practices Act (FDCPA) was "based on an alleged violation of § 524" that does not extend to Plaintiff's causes of action here. *Walls*, 276 F.3d at 510–11.

First, Plaintiff's FCRA claim is not "functionally equivalent" to an alleged violation of § 524. Unlike § 1692f of the FDCPA, at issue in *Walls*, which prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect an debt," the Fair Credit Reporting Act (FCRA) is not duplicative of § 524 and does not entail "bankruptcy-laden determinations." *Walls*, 276 F.3d at 510–11. Under the FCRA, it is the reporting of inaccurate information without reasonable care that is the violation of the FCRA, not unfair effort to collect a debt. Conversely, negative reporting,

without more, does not violate the discharge injunction. *Keller v. New Penn Fin., LLC (In re Keller)*, 568 B.R. 118, 123 (B.A.P. 9th Cir. 2017).  While a creditor like Key might use reports to credit rating agencies in an attempt to collect debt, that is incidental to the conduct prohibited by the act, unlike the FDCPA which targets debt collection itself. Accordingly, § 524 and the FCRA are not "competing" but complementary, because they prohibit different acts. As they are not competing, it is not necessary to harmonize congressional intent and determine if Congress intended to partially repeal the FCRA in enacting § 524 and the Bankruptcy Code. Moreover, none of the cases Key cites applied *Walls* to a FCRA claim.

Second, Plaintiff's unjust enrichment and NDTPA claims under Nevada law are not based on an alleged violation of § 524. While the Court in *Walls* was required to "read two competing statutes jointly" and harmonize congressional intent, that analysis is inapplicable to state-law claims, which cannot be implicitly repealed as the *Walls* court held the FDCPA was in part, but must be preempted.

"Congress did not place preemptive language in the Bankruptcy Code, nor did Congress intend that the Bankruptcy Code be so pervasive that it occupy the field of debtor/creditor relations. Therefore, in order for this court to conclude that the Bankruptcy Code preempts the [state] law, the court must conclude that an actual conflict exists between a specific provision of the Bankruptcy Code and [the state law]." *In re P.K.R. Convalescent Centers, Inc.*, 189 B.R. 90, 93 (Bankr. E.D. Va. 1995). *Walls* provides no support for the position that there is a *conflict* between § 524 and common-law unjust enrichment or the NDTPA justifying implied preemption.

In *In re Chaussee*, 399 B.R. 225, 234 (B.A.P. 9th Cir. 2008), cited by Key, the Bankruptcy Appeals Panel of the Ninth Circuit relied on *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910 (9th Cir. 1996), to hold that the Bankruptcy Code preempted application of the Washington Consumer Protection Act, WASH. REV.CODE § 19.86, *et seq.*, to the filing of a proof of claim in the bankruptcy court that the debtor-plaintiff alleged the creditor did not owe.  But *Chaussee* and *MSR Exploration* are not relevant to this case, as in each case "the factual predicate for the state law claim hinged upon

the alleged wrongful conduct of a party *in the bankruptcy case*." *Id.* at 233. Here, unlike those cases, the creditor's conduct is not action within a bankruptcy case, such as the initiation of an involuntary bankruptcy or the filing of a false proof of claim, but wrongful post-bankruptcy conduct. Accordingly, it does not undercut the purposes and policies of the Code, so that complete preemption is warranted.

*Walls* requires none of Davis's other claims to be dismissed, Davis's state-law claims are not preempted, and none of Key's cases apply *Walls* to the FCRA, unjust enrichment, or the NDTPA.[2]

**D.  Davis's claim for contempt can be construed as a motion for contempt.**

Key next argues under *Barrientos v. Wells Fargo Bank, N.A.,* 633 F.3d 1186 (9th Cir. 2011), that Davis's claim for contempt must be dismissed because it was brought by a complaint and not a motion for contempt. Davis contends *Barrientos* is in conflict with *Walls* on this point, as the plaintiff in *Walls* filed a claim for contempt in a complaint which was subsequently referred to the bankruptcy court, in the same procedure Plaintiff has employed here. In *In re Teran*, the bankruptcy court noted that in *Taggart v. Lorenzen*, ___ U.S. ___, 139 S. Ct. 1795 (2019), decided well after *Walls* and *Barrientos*, the United States Supreme Court "very specifically identified Section 105 and 524 as the provisions that permit a court to hold a creditor in civil contempt. There is no reference to a motion for contempt. under Rule 9020 in the opinion." *In re Teran*, 649 B.R. at 803, n.3. Although the court in *Teran* declined "to glean that somehow the Supreme Court overruled *Walls* and *Barrientos*, sub silentio," the requirement in *Barrientos* that a claim for contempt be brough by way of motion is inconsistent with *Taggart* locating that power purely in the statutes of the Bankruptcy Code. It follows

---

[2] *See, e.g., Chaney v. Bayview Loan Servicing, LLC*, No. 2:16-cv-01418, 2017 WL 3836122, at *1 (D. Nev. March 14, 2017) (FDCPA claim); *Patton v. Citizen Bank, N.A.*, No. 2:18-cv-01351, 2019 U.S. Dist. LEXIS 104830, at *4-6 (D. Nev. June 24, 2019) (same); *Berkowitz v. Bayview Loan Servicing, LLC*, No. 2:13-cv-00759, 2014 U.S. Dist. LEXIS 102494, at *6-9 (D. Nev. July 25, 2014) (same); *Cave v. Valley Collection Servs. LLC*, No. 15-cv-00390, 2015 U.S. Dist. LEXIS 185146, at *3-5 (D. Ariz. June 18, 2015) (same); *Kopf v. Nationstar Mortg. LLC*, No. 18-cv-185, 2018 U.S. Dist. LEXIS 160317, at *3-5 (S.D. Cal. Sept. 18, 2018) (same); *Harvey v. AllianceOne Receivables Mgmt.*, No. 10-cv-5091, 2011 U.S. Dist. LEXIS 77760, at *2-8 (E.D. Wash. July 18, 2011).

that *Barrientos* is inconsistent with *Taggart* and is no longer good law. Indeed, "*Barrientos* is unclear, . . . as to the proper procedure where, in addition to contempt damages, a debtor seeks other or additional relief of the sort that usually requires an adversary proceeding." *In re Nash*, 56 B.R. at 879 (declining to remand to determine whether contempt hearing is warranted when contempt heard in adversary proceeding because "it would not serve the interests of justice"). Because it erects a formalistic barrier to this court's power, is incompatible with *Taggart*, and is even inconsistent with *Walls* itself, this Court should conclude *Barrientos* has been overruled.

Assuming *Barrientos* remains binding precedent, however, Davis respectfully requests this Court treat Plaintiff's cause of action for contempt as a motion for contempt. *See In re Lopez*, 345 F.3d at 706 ("The bankruptcy court did not abuse its discretion in construing the pleadings to obtain substantial justice." (citing Fed. R. Civ. Pro. 8(f))); *In re Motichko*, 395 B.R. 25, 33 (Bankr. N.D. Ohio 2008) (treating claim for contempt in complaint filed in adversary proceeding as motion for contempt because "[t]o dismiss on procedural grounds alone would be to elevate form over substance," and "[g]iven that this Court has the discretion to require the more structured discovery process of an adversary proceeding in a contested matter, the Court sees no reason to require Debtors to dismiss this adversary proceeding and refile it as a contested motion. Such unnecessary 'hoop jumping' would merely serve to increase the costs of litigation, without providing any real benefit to either party.").

Furthermore, *In re Teran* supports the proposition that a debtor can file an adversary to determine the dischargeability of debt and a discharge violation, as the court in that case allowed the plaintiff to join a sanctions motion and an adversary proceeding to determine dischargeability. *In re Teran*, 649 B.R. at 803. Davis has effectively sought a motion for contempt in her FAC. "The Ninth Circuit has 'adopted a two-party test for determining the propriety of a contempt sanction in the context of a discharge injunction [violation]: '[T]o justify sanctions, the movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction.' " *In re Pohlman*, 2018 WL 3854137, at *5 (quoting *Renwick v. Bennett (In re Bennett)*,

11

298 F.3d 1059, 1069 (9th Cir. 2002) (alterations in original). The allegations in the FAC, if proven,

satisfy both of these elements. (*See, e.g.,* ECF No. 1 at ¶¶107–33, 164, & 166).

Alternatively, Davis is prepared to file a motion for contempt in this reopened bankruptcy case.

Should this Court determine that Davis must request relief for alleged violations of the discharge

injunction in a motion for contempt and that it cannot treat the claim in the FAC as such a motion, it

should permit the filing of a motion for contempt in the bankruptcy case while denying Defendants'

motions to dismiss with respect to Davis's claims. In doing so this Court may "consider the

consolidation of these proceedings for trial pursuant to Fed. R. Civ. P. 42, made applicable to adversary

proceedings by Fed. R. Bankr. P. 7042 and contested matters by Fed. R. Bankr. P. 9014(c)." *In re*

*Moore*, 521 B.R. 280, 292 (Bankr. E.D. Tenn. 2014); *see In re Teran*, 649 B.R. at 803 ("[T]he court

is authorized to consolidate a Rule 9020 sanctions motion, the class action process to deal with

multiple contempts and adversary proceedings to determine dischargeability.").

### E. Key Had No Objectively Reasonable Basis for Believing the Loans Were Not Discharged.

Key next argues that Davis failed to allege facts demonstrating  that Key had no objectively

reasonable basis for believing the Loans were not discharged. Under *Taggart v. Lorenzen*, "civil

contempt may be appropriate if there is no objectively reasonable basis for concluding that the

creditor's conduct might be lawful." ___ U.S. ___, 139 S. Ct. at 1801–02. Key points to (1) the

discharge order's standard language that states "**some debts are not discharged**," including "debts

for most student loans," and (2) Davis's description of the Loans as "student loans." First, the pattern

language of the discharge order accurately reflects federal law specifying that some educational loans

are not discharged (i.e., "qualified education loans"), but it also implies that other loans will be

discharged, including those exceeding the cost of attendance and those to attend non-Title IV

institutions. Key appears to argue it has an objectively reasonable basis for concluding that *all* "student

loans" are nondischargeable, but that is both an unreasonable interpretation of the discharge order, and

an argument that would render student loans that should be discharged under federal law effectively nondischargeable, depriving debtors of the "fresh start" of bankruptcy. Second, ample evidence shows that the Loans were dischargeable as discussed in Section G below. There is no objectively reasonable basis for Key to presume these loans are nondischargeable.

### F.  None of Plaintiff's Claims are Barred by Judicial Estoppel.

Key asserts the doctrine of judicial estoppel bars all of Davis's claims. "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). The Ninth Circuit has considered three factors identified by the United States Supreme Court "that courts *may* consider in determining whether to apply the doctrine of judicial estoppel": (1) "a party's later position must be 'clearly inconsistent' with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 782–83 (cleaned up).

Key argues Davis's claims are barred by judicial estoppel because Davis's claim that the Loans were discharged purportedly "directly conflicts with a position taken by Davis before the Bankruptcy Court." Key is wrong for three reasons: (1) Davis's position is not "clearly inconsistent" with any position previously taken by Davis; (2) no court accepted an initial position by Davis because Davis did not take a position on the dischargeability of the Loan such that judicial acceptance of the positions would create the perception that either court was misled; and (3) there is no unfair advantage or unfair detriment resulting from adoption of Davis's position.

i.    *Davis's position in this case is not "clearly inconsist[]ent" with any position previously taken by Davis*

First, Key argues that Davis took a position in the bankruptcy proceeding that is "clearly inconsistent" with her position now. Key bases this assertion on Davis's description of the Loans on her bankruptcy petition as "student loans" and "educational." Davis's claims are not "clearly inconsistent" with any position in the bankruptcy proceeding because Davis did not take a position in the bankruptcy proceeding on the extent to which the Loans were dischargeable—she merely listed them to apprise creditors and this Court of their existence, along with her other assets and liabilities. Accordingly, Key's reliance on *Hamilton* is misplaced. There, the debtor failed to disclose a potential cause of action against his insurer as an asset in bankruptcy. *See Hamilton*, 270 F.3d at 784. Here, there is no dispute that Key had notice of the existence of Davis's Loans. Further, Davis did not, merely by listing her Loans as "educational" or as "student loans" on the petition, advance a position on whether any portion of the Loans were dischargeable under § 523(a)(8) of the Bankruptcy Code, which prohibits discharge of any loan that satisfies the definition of a "qualified educational loan" under the Internal Revenue Code, an inquiry which in turn requires analysis of whether the loan was "incurred by the taxpayer solely to pay qualified higher education expenses," meaning the "cost of attendance" as defined under another statute. *See* 11 U.S.C. § 523(a)(8)(B); 26 U.S.C. § 221(d)(1); 26 U.S.C. § 221(d)(2). Both federal law and the pattern discharge injunction language make clear that not all "education loans" or "student loans" are nondischargeable. Davis's listing the Loans as "educational" did not obscure this fact from Key.

### ii.    The bankruptcy court did not "accept" an initial position by Plaintiff

Similarly, judicial estoppel is not warranted because the bankruptcy court did not "accept" the position Key argues Davis asserted in the bankruptcy court—that the Loans were qualified education loans not subject to discharge. The Discharge Order on which Key relies and through which this Court discharged Davis's debt and clarified which debts were not subject to discharge, supports the opposite conclusion. In the Discharge Order, this Court notified Davis that among examples of debts that are not discharged are "*most* student loans." (ECF No. 2, Ex. C. (emphasis added)). Logically, the

14

bankruptcy court accepted Davis's position in the present case—that some "student loans" are dischargeable, including those like Davis's that are not "Qualified Education Loans." This factor is likewise distinguishable from *Hamilton*, where the Ninth Circuit held the bankruptcy court accepted the debtor's nondisclosure of an asset in allowing discharge. *Hamilton*, 270 F.3d at 784. Here, one may reasonably infer that the bankruptcy court rejected the initial position Key imputes to Davis by concluding that some student loans are dischargeable. Accordingly, there is no "judicial acceptance of an inconsistent position in a later proceeding [that] would create the perception that either the first or the second court was misled." *Id.* at 782.

          iii.    *There is no unfair advantage or unfair detriment resulting from adoption of Davis's position*

Even assuming Davis did originally assert the position that the Loans were exclusively for education and nondischargeable, there is still no "unfair advantage" for Davis or "unfair disadvantage" that would be imposed on Key because the bankruptcy court determined that at least some of the student loans were dischargeable. For these reasons, judicial estoppel does not bar any of Davis's claims.

**G.  The FAC adequately alleges facts permitting a reasonable inference that the Loans were discharged**

Next, Key argues the FAC failed to allege facts permitting a reasonable inference that the Loans were discharged in bankruptcy. Key's argument should be rejected because the FAC plausibly alleges that the Loans were discharged.

First, the FAC alleges that "Plaintiff paid for her cost of attendance at St. Rose with federal student loan funds" and that "Plaintiff's cost of attendance was covered by federal student loan funds." (ECF No. 1, ¶¶ 23, 25). By definition, any loans in excess of "cost of attendance" are not "qualified education loans" which are not dischargeable, but are at most "mixed-use" loans, which are dischargeable. *See* 26 U.S.C. 221(d)(1); 26 C.F.R. 1.221-1(e)(4) (defining "mixed-use" and "qualified education loans").

Second, Davis alleged that, in addition to the federal student loans which "paid for her cost of attendance," "Plaintiff also borrowed approximately $10,752.68 in private student loans from Defendants to pay for living expenses while attending St Rose." (ECF No. 1, ¶¶ 23, 24). As Davis further alleged, "Because Plaintiff's cost of attendance was covered by federal student loan funds, the private student loans from Defendants necessarily included funds in excess of the cost of attendance." (ECF No. 1, ¶ 25). Furthermore, these loans were paid directly to Davis.

Based on these allegations, this Court may reasonably infer that the cost of attendance was entirely covered by Davis's federal student loans. Moreover, even assuming some of the purchases made with the Loans went toward "miscellaneous personal expenses" with an educational purpose, this Court need not infer that all of the purchases did. Accordingly, the FAC states sufficient plausible allegations from which this Court can conclude the Loans exceeded the cost of attendance and were discharged.

### H.  The FCRA claim here does not involve an unsettled legal question

Key next argues Davis's FCRA claim must be dismissed because it involves an "unsettled legal question." Key relies on *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 266 (2d. Cir. 2023), in which the Second Circuit affirmed summary judgment on a FCRA claim in which the plaintiff alleged the loan provider wrongly reported loan debt to the credit rating agencies that the plaintiff contended was discharged in bankruptcy because "the legal inaccuracy alleged . . . is not cognizable under the FCRA." *Id.* Although both *Mader* and this case involve loans the defendants contend were not discharged for educational purposes, the exception the plaintiff in *Mader* relied upon demanded the result there because it required legal analysis of an ambiguous clause: "made under any program funded in whole or in part by" the government or a nonprofit. *See* 11 U.S.C. § 523(a)(8)(A)(i). The Second Circuit noted that recognizing the cognizability of a claim under this subsection would have required interpreting the term "program" narrowly enough to avoid bringing all education loans within

its ambit, and it further noted courts had disagreed about the level of specificity required when identifying a qualifying "program" under § 523(a)(8)(A)(i). *Id.* at 268–69.

Here, in contrast, where there is no "program" relying on government or nonprofit aid and the loan is private, the question is simply whether the loan is a "qualified education loan" under § 523(a)(8)(B), which only involves a question of whether the loan exceeded the "cost of attendance" under 26 U.S.C. § 221(d)(2) and 20 U.S.C. § 1087ll (1986). These statutes define the costs included in the term such as "tuition and fees" and "room and board," which are "objectively and readily verifiable," and do not carry the ambiguity inherent in the term "program." Davis's payment history is not relevant to this question, particularly given Defendants' conduct in coercing Davis to make payments on the discharged debt.

Accordingly, the inaccuracy alleged here does not involve the sort of "unsettled" legal question rejected in *Mader*.[3] In *In re Teran*, a bankruptcy court in this circuit distinguished *Mader* and denied summary judgment on a claim that a creditor continued reporting on allegedly discharged student loan debt under the California Consumer Credit Reporting Agencies Act (a state-law analogue to the FCRA) in part by distinguishing *Mader*. 638 B.R. 620, 625–26 (Bankr. N.D. Cal. 2022). The *Teran* court held that *Mader* was not relevant to the question of whether the loans at issue were non-dischargeable "qualified education loans" because in *Mader* "there was no dispute that the program that originated the plaintiff's private loans also made Stafford loans." *Id*. It then held the loan was not a nondischargeable "qualified education loan" as a matter of law—the same provision Davis advances here. *See id.* at 627. Because whether Davis's private student loan was a "qualified education loan" that covered the cost of attendance is objectively and readily verifiable, and because Davis already

---

[3] Alternatively, *Mader* is not binding on this Court and is wrongly decided. Other courts have not "followed *Mader*'s lead" as AES argues. The court in the lone case with which AES supports this proposition merely cited *Mader* for the rule that "inaccuracies that turn on legal disputes are not cognizable under the FCRA"—*not Mader*'s application of that rule to any part of § 523. *See Hyde v. Trans Union, LLC*, No. 2:21-CV-230, 2023 WL 2816029, at *4 (quoting *Mader*, 56 F.4th at 270).

had federal student loans going toward the cost of attendance and the private student loans in question exceeded the cost of attendance, the FCRA claim should not be dismissed.

### I.   The NDTPA applies to this transaction.

Finally, Key argues Davis's NDTPA claim should be dismissed because the NDTPA does not apply, as the NDTPA "only applies to transactions involving the sale or lease of good[s] and services." This argument fails because, even assuming consumer lending is not a "service," the NDTPA "catch-all provision" extends beyond the sale of or lease of goods or services.

Nev. Rev. Stat. § 41.600(2)(e) provides that "any person who is a victim of consumer fraud may bring a cause of action against the alleged perpetrator." "Consumer fraud includes '[a] deceptive trade practice' as defined by the NDTPA." *R.J. Reynolds Tobacco Co. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 138 Nev. Adv. Op. 55, 514 P.3d 425, 429 (2022) (quoting NRS 41.600(2)(e)). Under the NDTPA, "Deceptive trade practices" are defined broadly through a catch-all provision which prohibits a person "in the course of his or her business or occupation" from "[k]nowingly mak[ing] any other false representation in a transaction." Nev. Rev. Stat. § 598.0915(15).

Nevada courts have not conclusively held whether conduct by lenders to consumers is covered by the NDTPA. However, while other "deceptive trade practices" prohibited under § 598.0915 "apply specifically to the sale or lease of goods or to retail installment transactions," the Supreme Court of Nevada has held in an unpublished decision that "NRS 598.0915(15) could apply to [other] transactions." *Davenport v. GMAC Mortg.*, 129 Nev. 1109, 2013 WL 5437119, at *2 (unpublished disposition). Accordingly, one need only be engaged "in the course of his or her business or occupation" when "making a false representation in a transaction" for one's act to come within the ambit of this provision. That "transaction" is not limited to one for sale or lease of goods or services. In *Davenport*, the transaction was for the sale of real estate. *Id.* Here, the transactions into which Key entered were the original loan and its subsequent wrongful attempts to collect on that loan. Although in *Gage v. Cox Communications, Inc.*, No. 2:16-cv-02708-KJD-GWF, 2017 U.S. Dist. LEXIS 63820,

2017 WL 1536219 (D. Nev. Apr. 26 2017) (unpublished), the case relied upon by Key, the district court notes "this Court has previously held that the entirety of Section 598 only applies to transactions involving goods and services," it cites cases decided before *Davenport* and is itself unpublished. Accordingly, to the extent there is guidance on the scope of the NDTPA, this Court should be persuaded by *Davenport*, in which the Supreme Court of Nevada directly addressed the catchall provision in NRS 598.0915(15), and not *Gage*, in which a federal court applying state law did not.

Finally, while attempts to collect a debt are not "doing business" under NRS 80.015(1)(h), the NDTPA covers all transactions Key's actions extend beyond attempting to collect a debt, such as by taking legal action. Davis owed Key no debt, and the obtainment of payments from Davis for debt not due was wrongful because they were procured by making false representations regarding Davis's legal rights and obligations regarding the discharged debts. For these reasons, the NDTPA applies and this Court should not dismiss Davis's NDTPA claim.

## IV. CONCLUSION

WHEREFORE, Plaintiff respectfully requests the Court deny Key's Motion to Dismiss. If the Court concludes *Barrientos* requires the filing of a motion for contempt, it should treat plaintiffs' contempt claim as such or permit the filing of a motion for contempt, deny the motion to dismiss plaintiffs' claims, and consolidate the matters for trial pursuant to Rule 42 and Bankruptcy Rules 7042 and 9014(c).

Dated: November 24, 2023

FREEDOM LAW FIRM

/s/ George Haines
George Haines, Esq.
Gerardo Avalos, Esq.
8985 S. Eastern Ave., Suite 350
Las Vegas, Nevada 89123

*Attorneys for Plaintiff*

MILBERG COLEMAN BRYSON PHILLIPS PLLC

/s/Scott C. Harris (Admitted Pro Hac Vice)
Scott C. Harris, Esq.
sharris@milberg.com
900 W. Morgan Street
Raleigh, NC 27603
(919) 600-5003