```
                    UNITED STATES BANKRUPTCY COURT
                    DISTRICT OF NEVADA (LAS VEGAS)

                                          .
IN RE:                                    .  Case No. 18-16836-hlb
                                          .  Chapter 7
AMANDA RAE DAVIS,                         .
                                          .
                                          .
                Debtor.                   .
                                          .
. . . . . . . . . . . . . . . . .         .
                                          .  Adv. No. 23-01110-hlb
AMANDA RAE DAVIS,                         .
                                          .
                Plaintiff,                .
                                          .  300 Las Vegas Blvd. South
v.                                        .  Las Vegas, NV 89101
                                          .
KEYBANK N.A., et al.,                     .  Thursday, December 7, 2023
                                          .  10:05 a.m.
                Defendants.               .
. . . . . . . . . . . . . . . .           .
```

        TRANSCRIPT OF ADVERSARY CASE 23-01110, COMPLAINT
     FILED BY AMANDA DAVIS VS. KEYBANK N.A., KEYBANK TRUST,
                     FEE AMOUNT 350 [1];
 MOTION FOR SUMMARY JUDGMENT WITH CERTIFICATE OF SERVICE FILED
 BY ADAM KYLE BULT ON BEHALF OF PENNSYLVANIA HIGHER EDUCATION
                      ASSOCIATION [9];
 MOTION TO DISMISS CASE/AMENDED COMPLAINT WITH CERTIFICATE OF
SERVICE FILED BY JARED L. INOUYE ON BEHALF OF KEYBANK N.A. [20]
            BEFORE THE HONORABLE HILARY L. BARNES
             UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES CONTINUED.

Audio Operator:         David Lindersmith, ECR

Transcription Company:  Access Transcripts, LLC
                        10110 Youngwood Lane
                        Fishers, IN 46048
                        (855) 873-2223
                        www.accesstranscripts.com

     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):


For Amanda Davis:          Freedom Law Firm, LLC
                           By:  GEORGE HAINES, ESQ.
                           8985 South Eastern Avenue, Suite 100
                           Las Vegas, NV 89123
                           (702) 880-5554

For KeyBank, N.A.:         TODD SEAMAN, ESQ.
                           41 South High Street, Suite 1700
                           Columbus, OH 43215
                           Phone

                           Thompson Hine LLP
                           By:  KIP T. BOLLIN, ESQ.
                           3900 Key Center
                           127 Public Square
                           Cleveland, OH 44114

For Pennsylvania           Brownstein Hyatt Farber Schreck
Higher Education           By:  PATRICK REILLY, ESQ.
Assistance Agency:         100 N. City Parkway, Suite 1600
                           Las Vegas, NV 89106
                           (702) 382-2101

1        (Proceedings commence at 10:05 a.m.)

2              THE COURT:  Please have a seat.  Good morning.

3              MR. HAINES:  Good morning.

4              MR. SEAMAN:  Good morning.

5              MR. REILLY:  Good morning.

6              MR. BOLLIN:  Good morning.

7              THE COURT:  David, do you want to call the matter?

8              THE CLERK:  Certainly.  The matters on the calendar

9    today for the Thursday, December 7, 2023, 10 a.m. calendar,

10   United States Bankruptcy Court District of Nevada, the

11   Honorable Hilary Barnes presiding.  Three matters in Davis v.

12   KeyBank, N.A., the first matter being motion for summary

13   judgment and motion to dismiss.

14             THE COURT:  Thank you.  Appearances, please.

15             MR. HAINES:  George Haines on behalf of the debtor,

16   Amanda Davis.

17             THE COURT:  Thank you, Mr. Haines.

18             MR. HAINES:  Thank you.  Good morning.

19             THE COURT:  Good morning.

20             MR. SEAMAN:  Good morning.  Todd Seaman on behalf of

21   the defendant, KeyBank, N.A.

22             THE COURT:  Thank you, Mr. Seaman.

23             MR. REILLY:  Good morning, Your Honor.  Pat Reilly

24   and Monique Jammer appearing on behalf of the Pennsylvania

25   Higher Education Assistance Agency.

1              THE COURT:  Thank you.

2              MR. BOLLIN:  Yes, Your Honor.  Kip Bollin also

3  appearing on behalf of Defendant KeyBank, N.A.

4              THE COURT:  Okay.  Thank you.

5              So in terms of jurisdiction, I know that this was

6  referred from Judge Dorsey from the district court, and I

7  believe that PHEAA does not consent to any non-core matters

8  being decided by the Court.

9              The other two parties, KeyBank and the plaintiff,

10 didn't say anything in their pleadings with regard to consent

11 or non-consent to jurisdiction.  So I just want to make certain

12 that I understand what the parties' position is on that.

13             So, Mr. Haines, why don't you go first?

14             MR. HAINES:  Your Honor, we're fine with you making

15 decisions on the non-core issues.

16             THE COURT:  Okay.  Thank you.

17             MR. SEAMAN:  And, Your Honor, on behalf of KeyBank,

18 we are aligned with our co-defendant that jurisdiction would be

19 for the core issues in this matter.

20             THE COURT:  Only on the core issues and the not --

21 okay.

22             MR. SEAMAN:  Yes, Your Honor.

23             THE COURT:  So my -- the discharge issue that is

24 Count 3 would be a core proceeding under 157(b)(3), I think

25 it's I or J.  The other matters with regard to the FCRA and the

1   Nevada Deceptive Trade Practices and unjust enrichment would be

2   related, but non-core matters.  Is that correct?  Does

3   everybody agree with that assessment?

4           MR. HAINES:  Yes, Your Honor, I agree with that

5   assessment.

6           MR. REILLY:  It's correct, but I want to make the

7   caveat that one of the arguments that we're making is that

8   those claims can't proceed because of Walls and Barrientos and

9   that the exclusive remedy is a contempt proceeding in the core

10  proceeding and that these causes of action cannot be

11  determined.

12          THE COURT:  That's what makes it a little more

13  difficult to rule in its entirety here.  So that's why the

14  Court wanted to understand kind of what the parties' position

15  is in connection with my deciding one and then sending report

16  and recommendations back to Judge Dorsey in connection with

17  those.

18          So why don't we hear from KeyBank, your argument, and

19  then we'll address this later, perhaps.

20          MR. SEAMAN:  Great.  And would you prefer that I

21  approach the lectern?

22          THE COURT:  Yes, please.

23          MR. SEAMAN:  Yep.  Good morning, Your Honor.  As

24  mentioned, my name is Todd Seaman.  I'm here on behalf of the

25  defendant, KeyBank, N.A.

1           Through this adversary proceeding, Plaintiff seeks to

2   recover damages for alleged violations of a bankruptcy

3   discharge order.  The problem is that Plaintiff has failed to

4   comply with the Ninth Circuit's procedural mandates for seeking

5   relief for a violation of a discharge order.

6           Ninth Circuit law is clear that, one, a debtor cannot

7   assert a private right of action for violation of a discharge

8   order, and, two, a debtor cannot assert a claim that is

9   functionally equivalent to a claim for violation of a discharge

10   order.  The appropriate remedy, indeed, the only remedy, for an

11   alleged violation of a discharge order is contempt of court.

12   And, Your Honor, the only way to initiate contempt proceedings

13   under Ninth Circuit precedent is through a motion for contempt,

14   but that is not what Plaintiff has filed here.

15           Instead, Plaintiff has filed these adversary

16   proceedings asserting claims based on a violation of a

17   discharge order.  And she's asserted those claims not only on

18   behalf of herself, but on behalf of a putative nationwide class

19   of debtors.

20           THE COURT:  And that's something that would not be

21   available if this is a motion for contempt, correct?  So it's

22   couched as an adversary proceeding in order to make the class

23   certification?

24           MR. SEAMAN:  Correct, Your Honor.  And that, I think,

25   is at the bottom, the issue here of what is being pled and how

1  it is being pled.

2          But yes, we agree with the statement you just made,

3  that if this were filed as a motion for contempt, as it should

4  have been, that would be on behalf of the plaintiff in her

5  individual capacity, not on behalf of a class, let alone a

6  nationwide class of debtors.

7          THE COURT:  Okay.  Thank you.

8          MR. SEAMAN:  And while Plaintiff's claims are also,

9  in Key's position, substantively deficient, I intend to focus

10  my arguments today on the procedural deficiencies which we

11  contend are dispositive of the issues raised in our motion.

12          So first, there is no dispute that debtors have no

13  private right of action for a violation of a discharge order.

14  The Ninth Circuit expressly held that in Walls v. Wells Fargo,

15  and the Ninth Circuit has reaffirmed that holding over the past

16  20 years.  In fact, Plaintiff concedes that she does not have a

17  private right of action for violation of a discharge order, but

18  that's exactly what is pled in the amended complaint.

19          The third cause of action asserts a claim for, quote,

20  "bankruptcy discharge injunction violations under 11 U.S.C.

21  524,", and that cause of action plainly seeks damages as a

22  result of the alleged violations of a discharge order.  Third

23  cause of action is, therefore, squarely foreclosed by Walls.

24          Now, the fact that the amended complaint also asked

25  this Court to invoke its powers under Section 105 does not

1  change that result.  In fact, in Walls, the court -- the Ninth

2  Circuit rejected that very argument, holding that neither

3  Section 524 nor Section 105 gives right to a private right of

4  action.

5       Nor is there such thing as a cause of action for

6  contempt.  Civil contempt is a method of enforcing a court

7  order.  It's not an independent cause of action.

8       So this all begs the question, what is the proper

9  procedure for asserting a violation of a discharge order, which

10 is what is being alleged here?  Well, the Ninth Circuit

11 addressed that issue head on in 2011.

12      In Barrientos v. Wells Fargo, the Ninth Circuit held

13 contempt proceedings, quote, "Must be initiated by motion under

14 Rule 9014 and not by adversary proceeding." Barrientos remains

15 binding precedent in this circuit.  That holding is also

16 supported by the plain language of the bankruptcy rules

17 themselves.  As the Ninth Circuit recognized, Bankruptcy Rule

18 9020 exists for the sole purpose of mandating that contempt

19 proceedings be brought by motion.  The rule serves no other

20 function.

21      In an effort to circumvent this binding precedent in

22 the bankruptcy rules, Plaintiff has asked this Court to simply

23 treat the amended complaint as a motion for contempt.  Your

24 Honor, I respectfully submit that that invitation should be

25 rejected for several reasons.

1          First, treating the amended complaint as a motion for

2   contempt would violate the Ninth Circuit's clear mandate that a

3   party must seek relief by filing a motion for contempt, not an

4   adversary proceeding.  Second, treating the complaint as a

5   motion for contempt would implicate one of the very concerns

6   underlying the Ninth Circuit's holdings in Walls and its

7   progeny that there is no private right of action.  In Walls,

8   the Ninth Circuit cautioned, "Putting enforcement of a

9   discharge injunction in the hands of a court that did not issue

10  it, let alone in the hands of a jury, would be, quote,

11  'inconsistent with the bankruptcy code scheme that leaves

12  enforcement to the bankruptcy judge whose discharge order gave

13  rise to the injunction'."

14          The Ninth Circuit reiterated that reasoning in

15  Barrientos, stating, "Enforcement of a discharge injunction

16  belongs to the bankruptcy judge whose discharge order gave rise

17  to the injunction."  But here, Your Honor, the amended

18  complaint both, one, includes a jury demand, and two, seeks

19  enforcement of discharge orders presumably entered by

20  bankruptcy judges around the country.  Treating the complaint

21  as a motion for contempt would undermine that rationale

22  underlying the Ninth Circuit's holdings in Walls, Barrientos,

23  and related cases.

24          And third, treating the amended complaint as a motion

25  for contempt would ignore an important distinction between

1  adversary proceedings and contested matters in the class action

2  context.  Whereas Rule 23, which is the class action rule,

3  necessarily applies in adversary proceedings, bankruptcy courts

4  have discretion not to apply Rule 23 in contested matters.  And

5  bankruptcy courts routinely exercise that discretion to

6  preclude class proceedings in contested matters without even

7  getting to the point of deciding, did the plaintiff satisfy the

8  requirements for class certification.

9          So, in short, because there is no private right of

10  action for a discharge order violation, and because the only

11  way to initiate contempt proceedings is through a motion, the

12  third cause of action should be dismissed.

13         That leaves us with the amended complaint's remaining

14  claims. Those are claims for unjust enrichment, violations of

15  the Fair Credit Reporting Act, and violations of Nevada's

16  Deceptive Trade Practices Act.  Those claims, like the third

17  cause of action, are also barred by binding Ninth Circuit

18  precedent.

19         In Walls, in addition to holding that there is no

20  private right of action for a discharge order violation, the

21  Ninth Circuit also held a debtor may not pursue, quote,

22  "simultaneous or functionally equivalent claims that are based

23  on violation of a discharge order."  As permitting such a

24  simultaneous claim, no matter how it's cast, no matter how the

25  claim is labeled, would, in the words of the Ninth Circuit

1  allow through the back door what a debtor cannot accomplish

2  through the front door, a private right of action.

3        Earlier this year in Brown v. Transworld, the Ninth

4  Circuit reiterated that Walls precludes FDC, CPA and, quote,

5  "other claims", based on violations of Section 524.

6        THE COURT:  And what do you say about the plaintiff's

7  argument that FDCPA and FCRA are not equivalent?

8        MR. SEAMAN:  I think that it's true that they are

9  different statutory schemes, but the underlying rationale as

10 the Ninth Circuit has clarified is that either way, both claims

11 are foreclosed by Walls and its progeny.  Because the Ninth

12 Circuit has clarified in Brown, as it's clarified in Mannequin,

13 if a claim depends on the issuance of or the enforcement of a

14 discharge order, or in other words, if a claim will stand or

15 fall depending on the effect of a discharge order, the claim is

16 barred by Walls.

17        So if you walk through what's been alleged here, the

18 amended complaint alleges one, KeyBank was unjustly enriched by

19 collecting funds that were discharged in bankruptcy.  Two, Key

20 violated the FCRA by reporting that the loans were current as

21 opposed to discharged in bankruptcy.  And three, Key violated

22 the Deceptive Trade Practices Act by attempting to collect a

23 discharged debt.  Notwithstanding the different labels given to

24 these claims, each of them at its core is based on Key

25 violating the discharge order.  Each of these claims will rise

1  or fall depending on whether the loans were discharged by the

2  discharge order.  In other words, they're -- the only way Key

3  acted unlawfully here is if in fact it violated the discharge

4  order.

5       But Congress and the Ninth Circuit have both spoken.

6  Plaintiff's sole remedy for alleged violations of a discharge

7  order, again, no matter how the claims are cast, lies in

8  contempt proceedings, not an adversary proceeding for money

9  damages.  And for those reasons, Key submits that the amended

10 complaint should be dismissed.

11      And, Your Honor, unless you have specific questions

12 about some of the other substantive deficiencies, I think we

13 would rest and defer to our briefing on those arguments for

14 now.

15      THE COURT:  Okay.  Thank you.  I appreciate that, Mr.

16 Seaman.  And the way I'm going to handle this is that basically

17 these involve identical and maybe a few other arguments.  But

18 for the most part, I'd like to hear from the movants first.

19      And then, Mr. Haines, I'll give you the rebuttal with

20 -- and you have the last word.

21      MR. HAINES:  Thank you.

22      MR. REILLY:  Thank you, Your Honor.  And again, good

23 morning.

24      THE COURT:  Good morning.

25      MR. REILLY:  I was a bit surprised when this matter

1  was filed in bankruptcy court.  I was presuming we would see a

2  motion for contempt.  We did -- and I was presuming that

3  because there had been a lot of discussion about Walls and

4  Barrientos at the district court in front of Judge Dorsey

5  before she referred matters.  And what we got was a first

6  amended complaint that was substantively identical to the

7  original complaint that was filed in the district court.

8          I will try not to duplicate argument.  We did join in

9  arguments.  I think that one thing that we need to discuss is

10 that because Walls and Barrientos are binding on the Court and

11 because Barrientos is so very specific about the exclusive

12 forum for a motion for contempt, I think you hit on it that

13 this has been pleaded in an attempt to preserve the class

14 action allegations.  I think it's also been pleaded to preserve

15 the demand for jury trial to try to circumvent the Taggart

16 standard instead of the no fair ground of doubt standard that

17 you would have in a contempt proceeding.  You have these other

18 state law claims, and a Fair Credit Reporting Act claim that

19 has a burden of proof of preponderance of the evidence.

20         And so that's particularly problematic here.  And

21 each of these claims, and we mentioned it in our motion and in

22 a reply brief.  These state law claims, and the Fair Credit

23 Reporting Act claim all hinge on the bankruptcy-laden

24 determination.  This pleading is drafted in a way where it

25 presumes that the student debts were discharged.  That is not

1 to be presumed.  That is a threshold issue that is going to

2 have to be decided before you even get into the issue of

3 contempt.  And if the answer to the discharge question is no,

4 all of those claims disappear.  And so by the way they've been

5 pleaded -- and we identified those paragraphs in the complaint,

6 they are necessarily bankruptcy-laden determinations and

7 therefore barred under the Walls case.

8         So we did go through substantively -- oh, I'd like to

9 mention there's a discussion about declaratory relief.  Well,

10 the plaintiff is saying, well, you can decide declaratory

11 relief in an adversary proceeding, Judge.  And I don't think

12 that's a remarkable argument to make.  But if you look at the

13 cases that are cited to Tarrin, Nash, Lopez, the declaratory

14 relief that's being sought is whether the underlying debt was

15 discharged or not.  Here the allegation is we want declaratory

16 relief that the defendants violated the discharge order and

17 injunction.  That's a contempt proceeding.  And the Ninth

18 Circuit has specifically said I believe the KeyBank identified

19 it in its reply brief that that is not allowed under Ninth

20 Circuit case law.

21         So we discussed the voluntary payment doctrine as a

22 defense to the unjust enrichment claim.  That is unique to

23 Nevada.  It is an affirmative defense.  There is a burden

24 shifting when you identify payments that have been voluntarily

25 made.  The burden then falls on the plaintiff to demonstrate

1  through evidence why the payment was coerced or made under

2  duress or made under a business necessity.  You didn't get any

3  of that evidence here.  There's no declaration.  There's no

4  documentary proof.  It's simply arguments of counsel which are

5  not evidence.

6            But if you go through the Nevada Association Services

7  case which I was intimately involved with, that case involved a

8  homeowner's lien that had been recorded by my client.  And the

9  argument was that, well, the payment was made under duress

10  because there was a mechanic's lien, and therefore it was done

11  in defense of property.  And the Nevada Supreme Court rejected

12  that argument and said no, it was just a homeowner's lien.  It

13  was not -- there was no foreclosure that had been scheduled.

14  You didn't make the payment in defense of property.  It was not

15  coerced, and you had plenty of alternative avenues.

16            Here, applying that same rule, the plaintiff could

17  have immediately come back to bankruptcy court, filed a motion

18  for contempt the moment that she felt that she was being

19  pressured to make a payment.  Not making 45 payments -- monthly

20  payments for nearly four years afterwards, she could have come

21  back to court.  I've litigated contempt motions where, you

22  know, someone sends out a statement after a bankruptcy

23  discharge.  Someone sends out a demand letter.  The proper

24  venue is a motion for contempt.  That would have been her

25  avenue.

1          She also could have commenced an adversary proceeding

2  for declaratory relief to get a declaration of the court saying

3  no, my debts were discharged, as they did in <u>Tarrant</u> and the

4  other cases.  So there are other avenues available to the

5  plaintiff not to make payments for nearly four years.  So

6  sorry, I'd just like to --

7          THE COURT:  I'm just thinking.

8          MR. REILLY:  Oh, sure.  I'd like to get back to the

9  question about consent, and this is where I'm not a regular

10  bankruptcy practitioner.  I'd just like to let the Court know,

11  our objection was to the Court issuing final orders on non-core

12  matters.  You mentioned a report and recommendation.  My client

13  has no concerns with the Court making a report and

14  recommendation to the district court judge --

15          THE COURT:  Okay.

16          MR. REILLY:  -- and the district court, to make a

17  final determination.  So I hope that helps clarify.

18          THE COURT:  It does.

19          MR. REILLY:  Okay.  For --

20          THE COURT:  Thank you.  So if there were a motion for

21  contempt brought, there would have to be some sort of finding

22  that, absent the requirement of a 523(a)(8) action, that the

23  discharge order actually discharged these particular loans,

24  correct?

25          MR. REILLY:  As a threshold issue, yes.

1            THE COURT:  Correct.

2            MR. REILLY:  And then you would get into the fair

3   ground of doubt standard, because that determination that you

4   just described is kind of a hindsight determination, and you

5   would have to get into the issues of, well, the original

6   discharge order said most student loans aren't dischargeable.

7   The loans were described as educational loans.  The four years

8   of payments by the plaintiff, which suggests, in my

9   understanding of Section 524(F), is that debtors can make

10  voluntary payments even after there's a discharge.  So -- and

11  then we'll be getting into the discussion of the fair ground of

12  doubt and whether this particular -- these particular loans

13  were actually discharged or not, and whether it was so obvious

14  that a contempt would be appropriate.  And I don't think the

15  plaintiff will be able to meet that standard, but that's for a

16  later date.

17            THE COURT:  And that would be the later date if there

18  were a contempt motion brought?

19            MR. REILLY:  Correct.

20            THE COURT:  Okay.  And --

21            MR. REILLY:  And that should be the appropriate

22  procedure with evidence attached, with an opportunity to be

23  heard, with some discovery to be done, you know, under the

24  appropriate rules of the Court.

25            THE COURT:  And the arguments if I -- the argument, I

1    understand it, that the movants are making is that this is the

2    unresolved legal question that is at the basis of the motions

3    to dismiss or the motion for summary judgment that whether or

4    not these loans were discharged is the unresolved matter before

5    the Court.

6            MR. REILLY:  That is the unresolved legal question,

7    and that's why Mader is particularly appropriate on the Fair

8    Credit Reporting Act claim, but also on the other claims, too.

9    I mean, how can you have deceptive conduct when you have a

10   dispute over whether the debt was actually discharged or not?

11   Where's the misrepresentation?  Where's the deceptive practice?

12   So, yes.

13           THE COURT:  Well, and there's also an argument that

14   the Nevada Deceptive Trade Practices Act doesn't apply because

15   this is not a trade or a transaction --

16           MR. REILLY:  A trade practice.  Right.

17           THE COURT:  -- or a -- okay.  So --

18           MR. REILLY:  Correct.  It's not a transaction.  The

19   district court judges unanimously have held in various cases

20   that the Deceptive Trade Practices Act involves the sale of

21   something, goods or services.  There's a Davenport case that's

22   an unpublished case with the Nevada Supreme Court that involves

23   the sale of real estate, but still, it's a sale.  It's a

24   transaction.  Merely servicing a loan and processing a payment

25   is not a transaction within the meaning of the Nevada Deceptive

1  Trade Practices Act.

2           And by the way, there's also a 9(b) issue with regard

3  to that claim because it must be pleaded with particularity,

4  and it hasn't been.

5           THE COURT:  Okay.  Thank you, Mr. Reilly.

6           MR. REILLY:  Thank you.

7           THE COURT:  Mr. Haines.

8           MR. HAINES:  Right.  And good morning, again, Your

9  Honor.

10           THE COURT:  Good morning.

11           MR. HAINES:  I think we have to start with the

12  reality of the situation regarding the private student loans

13  and how they've been treated.  There has been this assumption

14  by the private student loan lenders that all their loans are

15  nondischargeable student loans, that they all survive

16  bankruptcy.  Okay?  We know that's not the case.  The issue is,

17  similar to the IRS, where the IRS has to do some investigation

18  regarding whether their debt is priority, unsecured, secured,

19  unsecured nondischargeable debt, I would say that that's what

20  the private student loan lenders should be doing before they

21  file a claim.  They should be investigating to see if they

22  actually have a claim that is a nondischargeable student loan.

23           THE COURT:  So are they not entitled to rely on the

24  statements and schedules that list it as an educational loan?

25  And would you agree with me that 523(A)(8) is -- puts the onus

1    -- it's a self-executing provision that puts the onus on the

2    debtor to obtain a ruling or an order stating that the student

3    loan has -- will be discharged as part of the bankruptcy

4    proceedings?

5            MR. HAINES:  I don't know if that onus should go on

6    the debtor.  The student loan -- private student loan lender is

7    in the best position to make that assessment, to review the

8    records to see if, like in this case, we're alleging that the

9    loans exceeded the cost of attendance.  That's something that

10   they would have all the information on, and they would be able

11   to make the determination on.

12           I believe a debtor should be able to file a

13   bankruptcy and list a student loan lender just like they list

14   the IRS.  And if it meets certain guidelines, the debt should

15   be discharged.

16           THE COURT:  But generally in bankruptcy, the IRS

17   isn't filing a non-discharge action, or the debtor isn't

18   required to get something from the IRS stating that the taxes,

19   whether they're dischargeable or not.  There's a provision that

20   specifically deals with that, whereas 523(A)(8) requires, you

21   know, the debtor -- it's a self-executing provision such that

22   if there isn't some sort of determination made that the student

23   loan is discharged, then the assumption is it is not

24   discharged.  Would you agree with me?

25           MR. HAINES:  I think that's been the treatment, but I

1    don't think that's the way it should be.  But if that is the

2    position, if we assume that's the case, then, you know, our

3    complaint specifically requests that we get a declaration that

4    the debt has been discharged.  And by making that request, that

5    is through an adversary proceeding.  An adversary proceeding is

6    the proper method of determining the dischargeability of a

7    debt.

8              THE COURT:  Right.  So that would be under 523(A)(8)

9    that the adversary proceeding would be brought rather than a

10   motion -- or I'm sorry -- an adversary proceeding for a

11   declaratory relief that the order has been violated.  Right.

12             MR. HAINES:  Well, I think if you follow the

13   reasoning in Homaidan, you know, the assumption that the court

14   -- that Judge -- well, Judge Stong took was that it was, you

15   know, these debts are discharged and that it should then be

16   adjudicated under 524 as a potential discharge violation.

17             THE COURT:  Okay.

18             MR. HAINES:  You know, we're advocating for righting

19   a wrong that's been going on for ever since I've been

20   practicing, which is again, just the assumption that all these

21   student loans are non-dischargeable.

22             But that brings us to the private cause of action.

23   We're not alleging a private cause of action.  We understand

24   there's no private cause of action under 524.  We're

25   specifically requesting that the Court use its powers to --

1  under its contempt powers to enforce 524.

2          THE COURT:  So how do you get around <u>Walls</u> and <u>Brown</u>

3  and <u>Barrientos</u>?

4          MR. HAINES:  And by you mean get around, is it the

5  bringing a motion is the proper procedure?

6          THE COURT:  Correct.  Like, I don't think that --

7  <u>Walls</u> states that 105 is not available to the Court in a

8  circumstance like this.

9          MR. HAINES:  I don't believe it covers this

10  circumstance where we have such a unique debt.  That's -- I

11  mean, it's hard to explain because, you know, if it's a credit

12  card debt, you know, we just -- we go in with motion for

13  sanctions.  You know, no doubt about it.  That's the way to go,

14  you know, because it's been discharge unless they oppose the

15  discharge.  This is a bit of a unique situation because there's

16  always been this assumption that it has not been discharged.

17          So you have this requirement of filing the adversary

18  as well.  And that was not what was in <u>Barrientos</u> or <u>Walls</u>.

19  Those were dealing with debts that are typically considered

20  discharged.

21          So I would agree to that a motion for sanctions, and

22  that's what I would do.  I would file a motion for sanctions.

23  I wouldn't file an adversary, you know, just for a discharge

24  violation.  In this case, we filed the adversary because we

25  anticipate that there's going to be brushback and that we're

1   going to have to prove that this debt was discharged.

2           And I believe that the Court, you know, in its

3   discretion has the power to consolidate a motion for sanctions

4   and an adversary.  That's what they did in Tehran.  The court

5   consolidated the class action, the motion for sanctions, the

6   adversary to determine dischargeability.  So under Rule 9014,

7   which also includes references to Rule 7, which Rule 7 contains

8   the adversary provisions and what justifies bringing an

9   adversary and dischargeability of debt is, of course, one of

10  the reasons to bring an adversary.  So I believe the Court has

11  the authority to -- and it's a matter of efficiency.  This

12  seems form over substance.  We're going to file a motion.

13  We're going to file an adversary.  We're going to have a

14  complaint.

15          We're going to have a motion.  It just -- they're

16  based on the same set of facts.  It would seem, for

17  efficiency's sake, that, you know, they would just be

18  consolidated.  And I think the Court has the power to do that.

19          THE COURT:  Okay.

20          MR. HAINES:  So that's our position on the private

21  cause of action.  We're not alleging it.  We agree there's no

22  private cause of action under 524.

23          Next, I guess we're going to discuss whether the

24  other causes of action are kind of subsumed or included in the

25  524 action.

```
 1              THE COURT:  It seems as though maybe it's because in

 2    every one of those claims, in those counts in the complaint, it

 3    specifically refers to the discharged debts, assuming that

 4    those debts have been discharged.  And so I can understand the

 5    movant's assertion that they're derivative or substantially

 6    based in the violation of the discharge order.  Because without

 7    the discharge of the debt, collecting on the discharged debts

 8    or reporting on the discharged, or if they're not discharged,

 9    then reporting on them, or continuing to collect them wouldn't

10    violate the discharge order, correct?

11              MR. HAINES:  It wouldn't violate the discharge order?

12              THE COURT:  It would --

13              MR. HAINES:  Oh, yeah.

14              THE COURT:  It would not violate the discharge order

15    if these were, in fact, not discharged.

16              MR. HAINES:  That's if they weren't.

17              THE COURT:  That's probably an unartful question.  I

18    apologize.

19              MR. HAINES:  No.  No, I got you.  I got you.  It's --

20              THE COURT:  But I'm trying to get you to the place

21    where we're talking about the fact that the complaint

22    specifically talks about the discharged debts, assuming that

23    that's the case.

24              MR. HAINES:  Yeah, so it's kind of a fine line that

25    we walk between coming into this court or going across the
```

1  street, you know, alleging another violation.

2          As far as, you know, the FCRA, there is case law

3  basically stating that, you know, inaccurate reporting is not a

4  discharge violation.  So that basically leaves us -- for

5  example, let's say a debt that's -- you file bankruptcy, the

6  debt's written off, okay, after bankruptcy.  Case is

7  discharged.  They continue to report the debt as write-off.

8  That's incorrect.  That's not a discharge violation.  It's a

9  Fair Credit Reporting Act violation.  But it's related to the

10 fact that you got a discharge, and they shouldn't have written

11 off the debt.

12         So there's interplay there, but the courts -- the

13 bankruptcy courts would basically say, this is not a discharge

14 violation.  You don't bring this here.  Even if I had a

15 confirmed plan, and I pulled one of my client's credit reports,

16 and they were still reporting it as delinquent, and they

17 weren't reporting it correctly as per the plan, I wouldn't file

18 a stay violation.  I, again, would have to go through the

19 dispute process and file it across the street and file an FCRA

20 complaint.  Again, these are intertwined.

21         THE COURT:  Because at that point, you'd be suing the

22 credit reporting agencies, or would you still be suing the

23 reporting?

24         MR. HAINES:  Both.

25         THE COURT:  Both.  Okay.  Go ahead.

1          MR. HAINES:  Yeah.  Yeah.  And you can have FDCPA

2    violations and, you know, discharge violations, you know, you

3    can have -- you know, if the FDCPA violates -- I mean, those

4    are -- those two statutes are, you know, closely linked.

5    They're basically inseparable unless you can separate them.

6          You know, with the FDCPA, you have to show, you know,

7    some independent act that's not reliant on, you know, the

8    discharge to basically, you know, maintain an FDCPA action.  So

9    I understand how those two interact and how -- you know, and

10   there's different -- you know, the FDCPA requires you to

11   contact the debtor, the bankruptcy court.  In <u>Walls</u> they

12   discuss this.  The bankruptcy court, you know, says don't

13   contact the debtor.  You can't do that, you know.  So there's

14   conflict there.  So that's one of the reasons I think they

15   decided that.  And plus they are a lot -- the facts in <u>Walls</u>,

16   it was reliant on the discharge, the FDCPA violation.

17          THE COURT:  Okay.

18          MR. HAINES:  As far as the other violations with

19   regard to Nevada Deceptive Trade Practices Act, you know, we

20   would allege that, you know, credit reporting is a service.

21   Credit reports are a product.  So we would allege that we do

22   fall within the Deceptive Trade Practices Act.  Whether or not

23   those two are too intertwined to coexist with FCRA, and that's

24   a good question.

25          THE COURT:  Yeah, because it seems to me that if

1  there's going to be a violation, let's assume that it is a

2  trade practice or a service and that the credit report is a

3  product, the claim that you're making on behalf of your client

4  is that it violates the Nevada Deceptive Trade Practices Act by

5  reporting a discharged debt.  Is that correct?

6          MR. HAINES:  That would be correct, yes.

7          THE COURT:  Okay.  So the claim is reliant on the

8  issue of whether the debt is discharged.

9          MR. HAINES:  That is probably correct, yes.

10         THE COURT:  Okay.  Thank you.

11         MR. HAINES:  And it's a little bit more difficult

12 with the unjust enrichment claim because I think under 105, you

13 know, judges have discretion on what sanctions they're going to

14 award.  So they may not award, let's say, out of pocket.  So

15 there could be a little bit of separation between the two

16 causes of action there as far as what could be awarded.

17         THE COURT:  Okay.

18         MR. HAINES:  And, you know, we would allege that, you

19 know, she was under duress, coerced.  She expected this loan to

20 be discharged when she filed bankruptcy.  You know, immediately

21 afterward, she gets negative credit reporting.  You know, she's

22 still struggling to this day with her credit.  You know, she

23 still can't buy a house.

24         THE COURT:  One of the things that I should have

25 checked was, was she represented in her bankruptcy?

```
1                MR. HAINES:  She was.

2                THE COURT:  Okay.

3                MR. HAINES:  Yes.

4                THE COURT:  Thank you.

5                MR. HAINES:  Yeah.  And I don't know if you wanted me

6   to touch on the judicial estoppel.  I just --

7                THE COURT:  Certainly.  Certainly.

8                MR. HAINES:  Oh.  Well, you know, as far as the

9   discharge order, which is, you know, issued by the clerk, the

10  discharge order basically states that, you know, most of the

11  loans are discharged.  So, you know, putting this --

12  identifying the debt as a student loan on the schedules, I

13  don't think is going to stop you from claiming it's discharged.

14               THE COURT:  Even if it says educational?  I mean, the

15  student loan, there was a descriptor actually added saying

16  educational loans.

17               MR. HAINES:  Well, here's what happened with -- for a

18  period of time in the district, you know, before you came on

19  board, the trustee would basically put in their (indiscernible)

20  that, hey, this is a student loan, you got to check the box,

21  student loan.  And I think that was -- they were trying to --

22  for statistical purposes, trying to determine how much debt was

23  for student loans.  I mean, that explains some of it.  Some of

24  this is pulled directly from credit reports.  You know, that's

25  what our bankruptcy software does.  It pulls the credit report.
```

1          But even if -- so if -- but, you know, take the

2     converse argument.  Say if we say it's a -- you know, it's a

3     mixed-use student loan, is it going to be discharged?  You

4     know, they've got to -- probably not, you know, because just of

5     the history of how it's been treated.  So --

6          THE COURT:  And how about the fact that your client

7     made payments for four years afterwards?

8          MR. HAINES:  Yeah.  I mean, that was -- there's no

9     reaffirmation agreement.  I don't think that without a

10    reaffirmation agreement, that that's still discharged, in our

11    opinion.

12          THE COURT:  And then with -- and there is the section

13    in 524, I think it's (C)(6), but don't hold me to it but --

14    that says you can continue making payments on something that's

15    not discharged in terms -- and in Nevada, there is, you know,

16    this idea that if you're paying them voluntarily, it's not --

17    the creditor has not been unjustly enriched.  What is your

18    thought on that?

19          MR. HAINES:  Yeah, I was getting -- to say that, you

20    know, she's been coerced.  She was under duress to make the

21    payments.

22          THE COURT:  Because it had been reported to the

23    credit agency?

24          MR. HAINES:  Yes.

25          THE COURT:  Okay.

1          MR. HAINES:  Yes.  And they were collecting on it, so

2    both.

3          THE COURT:  Okay.

4          MR. HAINES:  And just to let Your Honor, that we had

5    -- over at the district court, we had done some preliminary

6    discovery as well.  And, you know, we do have admissions saying

7    that the money was -- student loans were sent directly to

8    Amanda Davis.

9          THE COURT:  The payments?

10         MR. HAINES:  Yeah.

11         THE COURT:  Or I'm sorry, the invoices, the

12   statements?

13         MR. HAINES:  Yeah.  The -- well, the checks.  The

14   checks.

15         THE COURT:  She's been sending them directly.

16         MR. HAINES:  Well, I'm talking about when she got the

17   student loan.

18         THE COURT:  Okay.

19         MR. HAINES:  Okay.  So when she --

20         THE COURT:  It was not sent to the school.  It was

21   sent --

22         MR. HAINES:  It was sent to her.

23         THE COURT:  Okay.

24         MR. HAINES:  Okay.  So we have that.  They admitted

25   that they did not send it to the school.  The loan contract

 1  itself basically states that there is some money for

 2  incidentals that you can borrow.  So again, that would be

 3  beyond the cost of attendance.  So, you know, that's kind of

 4  the basis --

 5            THE COURT:  Okay.

 6            MR. HAINES:  -- of our lawsuit.

 7            THE COURT:  But then we're back to the question of

 8  whether this is an unresolved issue, right?

 9            MR. HAINES:  Yes.  Yes.  I --

10            THE COURT:  The unresolved matter of --

11            MR. HAINES:  I would say -- but, you know, it's

12  different than Mader.

13            THE COURT:  Okay.

14            MR. HAINES:  Okay.  Because Mader, you had a legal

15  issue there.  You had a loan product from Navient that was both

16  private and federal.  Okay?  So whatever the name of this

17  product was, you know, Navient, they have creative loans.  They

18  have tuition loans.  That particular product was both.  Okay?

19  So that, I understand there's a legal dispute.  But here,

20  again, we're alleging it's a mixed-use loan.  There's no

21  dispute here.  It's a discharged debt.

22            THE COURT:  Well, it seems that there is a dispute

23  because the lenders are saying it's not a mixed-use loan, and

24  there was no determination under 523(A)(8), which is the normal

25  course of trying to determine whether or not a debt is

1   discharged -- a student loan debt is discharged.  So it seems

2   there is an unresolved issue if it truly is that your client --

3   that the client's loan could have been discharged in the

4   bankruptcy.  There's been no determination one way or the other

5   on that issue, correct?

6           MR. HAINES:  That's correct.

7           THE COURT:  Okay.

8           MR. HAINES:  That's the fight here.  So --

9           THE COURT:  Okay.

10          MR. HAINES:  -- did Your Honor have any other

11  questions?

12          THE COURT:  Let me check.  I think you answered the

13  two that I had prepared for you, so I don't have any other

14  further questions for you.

15          MR. HAINES:  Okay.  Thank you, Your Honor.

16          THE COURT:  You're welcome.

17          MR. SEAMAN:  All right.  Just a few points I'd like

18  to follow up on.  One, the argument was made that Plaintiff is

19  appropriately seeking a declaration that the debt was

20  discharged through this adversary proceeding.  But, Your Honor,

21  that's not what has been alleged.  The only declaratory relief

22  sought in this action is the declaration that the defendants

23  violated the discharge injunction, which again goes back to the

24  arguments I made at the outset, that that is something that

25  needs to be brought via motion for contempt, not an adversary

1   proceeding.  You know, this is simply an effort to rewrite

2   what's actually been pled in the amended complaint.

3           There was also a suggestion that Plaintiff is not

4   alleging a private cause of action because they're relying on

5   the Court to invoke its powers under 105, but that I noted at

6   the outset that argument's been squarely foreclosed by Walls

7   where the Ninth Circuit said neither section 524 nor section

8   105 gives the debtor the right to a private cause of action.

9           There was also a suggestion that this Court has the

10  power to simply consolidate.

11          THE COURT:  Yeah.

12          MR. SEAMAN:  I think a couple issues with that, one,

13  there has been no motion for contempt filed for which this

14  Court could consolidate an action.  And related to the point

15  about declaratory relief, there is no adversary proceeding here

16  properly seeking a declaration that -- as to the

17  dischargeability of the debt.

18          So, in other words, there is no motion.  There is no

19  proper claim asserted through this adversary proceeding.  So

20  there is nothing to consolidate.  And also the In re Tehran

21  case upon which Plaintiff relies, for one, it's a non-binding

22  decision.  It's distinguishable in many, many regards.  And I

23  think kind of the bigger issue with that is that it ignores --

24  respectfully ignores the rationale underlying the Ninth

25  Circuit's decisions in Walls and Barrientos.  That again, it

1   needs to be the judge who initially issued that injunction

2   order should be the one enforcing.

3            THE COURT:  And is Tehran the case where the debtor

4   actually brought a 523(A)(8) action?

5            MR. SEAMAN:  Correct.  And --

6            THE COURT:  Okay.

7            MR. SEAMAN:  Correct.  And the debtor also filed the

8   motion for contempt.

9            THE COURT:  Okay.

10           MR. SEAMAN:  And those were ultimately consolidated.

11  Again, I would argue improperly for the reasons that it was a

12  class action and not appropriate.  But yes, also

13  distinguishable on those procedural grounds.

14           THE COURT:  Okay.  So are you -- are the movants

15  inviting a motion for contempt on the discharge order?

16           MR. SEAMAN:  I would --

17           THE COURT:  Such that this matter is just -- it's

18  going to take a different form, but it's -- you know, it --

19  I'll hear from you next.

20           MR. BOLLIN:  Sure.

21           THE COURT:  Don't stand up yet.

22           MR. SEAMAN:  I would submit -- and we'll see what my

23  co-defendant counsel has to say, but I would submit if

24  Plaintiff had or chooses to file a motion for contempt in her

25  individual capacity, that is the right to relief that she can

1   seek.  I think she'll have an uphill battle, as we've argued in

2   our motion, to meet the standard that's been discussed.  But

3   for her to have an adversary proceeding, and on a class basis

4   is certainly not the route.  And if she were to file a motion

5   for contempt under Ninth Circuit precedent, it should be on her

6   individual basis.

7            THE COURT:  Okay.  Thank you.

8            MR. SEAMAN:  And I also wanted to touch on the

9   argument again about the remaining claims, the unjust

10  enrichment, FCRA, and the Deceptive Trade Practices Act being

11  functionally equivalent to the discharge violation.

12            I think I would submit that Plaintiff construes the

13  Ninth Circuit cases and the reasoning too narrowly.  The

14  appropriate inquiry, as fleshed out in the decisions, and

15  especially in the recent Brown decision and the Mannequin

16  decision, which it was describing, the appropriate inquiry is

17  whether the claim depends on the enforcement of the discharge

18  order, or I think as you described it, whether the claim is

19  reliant upon the effect of that discharge order.  And here

20  again, every one of those claims is going to rise or fall

21  depending on whether the loans were in fact discharged, you

22  know.

23            THE COURT:  Which is an unresolved issue.

24            MR. SEAMAN:  Correct.

25            THE COURT:  Okay.

1          MR. SEAMAN:  And, you know, KeyBank could not have

2  been unjustly enriched if in fact the loans were not

3  discharged.  So again, all the claims are going to rise or fall

4  on that issue.  And under Ninth Circuit, under the reasoning

5  that they've fleshed out for when a claim is functionally

6  equivalent, this fits squarely with that.

7          And then I'll just add one point.  It wasn't really

8  at the heart of the procedural arguments that we've raised

9  today, but the discussion of the cost of attendance.  Cost of

10 attendance is a broadly defined legal term.  It's not as simple

11 as going to a university's website and saying what was the

12 tuition in 2005.  Cost of attendance is a legal term that

13 includes not only tuition, it includes an allowance for living

14 expenses, it includes an allowance for some personal expenses.

15 In other words, there are all of these other criteria other

16 than simple, you know, you go at the website, and you look with

17 the cost of tuition, and that also is foreshadowing the class

18 action.  One of the hurdles that there would be if this were to

19 get to that stage is for every single debtor, you're going to

20 have to go through each and every one of those inquiries.  What

21 was their gross income?  Did they have financial aid?  Were

22 they living on campus?  Were they a full-time or half-time

23 student?  Every single one of those hurdles is going to be part

24 of the assessment of did these loans exceed the legally defined

25 term cost of attendance.

```
 1              THE COURT:  Right.  But at that point based on the

 2   procedural arguments that you're making, that's kind of putting

 3   the cart before the horse.  At this point you're arguing --

 4              MR. SEAMAN:  Correct, Your Honor.

 5              THE COURT:  -- the -- you're trying to resolve the

 6   unresolved issue which is probably not where we need to go

 7   today.

 8              MR. SEAMAN:  Correct, Your Honor.

 9              THE COURT:  Okay.

10              MR. SEAMAN:  Okay.  Unless you have any further

11   questions.

12              THE COURT:  I don't.  Thank you.

13              MR. SEAMAN:  Thank you for your time.

14              THE COURT:  Thank you.

15              Mr. Reilly.

16              MR. REILLY:  Judge, to answer your question, my

17   client is not inviting anything, but what Walls and Barrientos

18   combined say is that if the plaintiff wants relief, it must be

19   done in the form of a motion for contempt.  And it's not six to

20   one half a dozen or another.

21              THE COURT:  It isn't.

22              MR. REILLY:  There are different standards, there are

23   different remedies.  And I think what the plaintiff is trying

24   to do here is keep her cake and eat it too, which she can't do.

25   She's asking for the ability to proceed in a contempt
```

1  proceeding while retaining unjust enrichment, Fair Credit

2  Reporting Act, Nevada Deceptive Trade Practices Act claims.

3  Walls and Barrientos say you can't do that.

4          I will say to the Court definitively, credit

5  reporting is not a service.  There is no legal authority to

6  support that.  My client does not have a contract with Ms.

7  Davis to provide credit reporting to her, doesn't get paid for

8  credit reporting.  My client isn't even a consumer reporting

9  agency.  For the purposes of the Fair Credit Reporting Act,

10 it's a furnisher.

11          THE COURT:  It furnishes.  Right.  It's a furnisher.

12          MR. REILLY:  Right.  And so, you know, and I

13 understand that some credit consumer reporting agencies sell

14 their credit reports, but my client's not part of that process.

15 My client furnishes information as part of a very large federal

16 scheme that involves credit reporting.  We don't do it as a

17 service.

18          So Ms. Davis was represented in her bankruptcy, and I

19 will add that Mr. Haines was her attorney in her bankruptcy.

20 So the voluntariness of the payments and the length of the 45

21 months of payments is relevant not just to the affirmative

22 defense of the unjust enrichment claim, but ultimately when we

23 get to a contempt proceeding, you know, when she asks for a

24 return of those monies, you're going to be looking at the

25 voluntariness of those payments and why she continued to do so.

1          Again, she could have immediately come back to court
2    the moment she received a statement or thought that she had to
3    make a payment to get clarification on it, and she did not.
4    And by the way, there's no evidence of that.  You were told
5    once again by counsel that she was coerced.  How was she
6    coerced?  I mean, there's no evidence of it.  The fact that
7    credit reporting was made, that there's a trade line on her
8    credit report, Ms. Davis has the right under the Fair Credit
9    Reporting Act to dispute a trade line that she disagrees with,
10   or thinks is wrong, and I believe she did actually do that.
11          THE COURT:  Do that.
12          MR. REILLY:  So --
13          THE COURT:  It's asserted that in the --
14          MR. REILLY:  Yeah, so there's no duress here, and
15   again, this is an unsecured loan.  If we again would go back to
16   Nevada Association Services, you had a secured obligation, a
17   homeowners association lien that was recorded with the Clark
18   County Recorder against the property, and the Nevada Supreme
19   Court said that's not coercion or duress.  You weren't
20   defending your property.  It's just a lien.  That's all it is,
21   and we're not even close to that level.
22          And I submit to the Court that this matter is just
23   like the Mader case for intents and purposes.  You heard
24   counsel arguing about how there have been, you know, years and
25   years of trying to right a wrong that's happened for years and

1    years, where everyone just assumed the student debts weren't

2    discharged.  Well, I mean, this is a novel theory that's being

3    brought to the Court by the plaintiff.  The notion that you go

4    through a bankruptcy proceeding, your debts are discharged, and

5    your student debts are automatically discharged, and you don't

6    have to do anything else to get a confirmation of that, that's

7    a fairly new argument.  And that's something that's certainly

8    not precedent in the Ninth Circuit.  And so, that's why Mader

9    is very much applicable, because there's a big legal question

10   hanging over this Court.  And what Mader says is you cannot

11   monetize that dispute into a Fair Credit Reporting Act claim.

12   That's not an inaccuracy within the meaning of the statute.  So

13   thank you, Your Honor.

14            THE COURT:  Thank you very much.

15            Okay, counsel.  I appreciated the briefing in this

16   matter.  I just wanted you to know that the briefing was

17   wonderful to see.  So much Ninth Circuit law and Nevada law,

18   and I really appreciated that, and I appreciated the arguments

19   today.

20            Given that I have the jurisdictional question about

21   core and non-core, I assume that I'm going to be issuing a

22   ruling and probably report and recommendation to Judge Dorsey.

23            So thank you again.  I appreciated the arguments

24   today and the briefing as well, not to be redundant, but thank

25   you.  And we're going to be adjourned.  Thank you.

1          MR. HAINES:  Thank you.

2          THE CLERK:  Pardon me, Your Honor.  Just for the sake

3  of the record, would Your Honor like to adjourn the scheduling

4  conference as well?

5          THE COURT:  Yes, we're going to adjourn the

6  scheduling conference as well, and we'll reset that.

7          THE CLERK:  Thank you.

8          THE COURT:  Thank you very much, Mr. Lindersmith.

9  Thank you all.

10          MR. REILLY:  Thank you, Your Honor.

11          THE CLERK:  Please rise.

12      (Proceedings concluded at 11:02 a.m.)

13                        *  *  *  *  *

14                    **C E R T I F I C A T I O N**

15

16          I, Alicia Jarrett, court-approved transcriber, hereby

17  certify that the foregoing is a correct transcript from the

18  official electronic sound recording of the proceedings in the

19  above-entitled matter.

20

21

22

23  _____

24  ALICIA JARRETT, AAERT NO. 428     DATE: December 26, 2023

25  ACCESS TRANSCRIPTS, LLC